CARTER ET AL., APPELLANTS, *v.*
PIONEER MUTUAL CASUALTY CO., APPELLEE.

[Cite as Carter v. Pioneer Mut. Cas. Co. (1981),
67 Ohio St. 2d 146.]

(No. 80-1259—Decided July 8, 1981.)

148

*Mansour, Gavin, Gerlack & Manos Co., L.P.A.*, and *Mr. Richard J. McGraw*, for appellants.

*Mr. William C. Ailes*, for appellee.

LOCHER, J.  Appellants, in their sole proposition of law, assert, in essence, that an excess judgment may be recovered from an insurer by an insured's estate or its assignee for "bad faith" despite the insolvency of the estate.

We find merit in this contention.

Traditionally, there have been two schools of thought concerning the imposition of liability upon an insurer for failing to exercise good faith which results in an excess judgment against the insured.

An increasing majority of jurisdictions have adopted the "judgment rule," which advocates the reasoning that an entry of judgment in excess alone is sufficient damage to sustain a recovery from an insurer for its breach of duty to act in good faith in defending the insured's case.[2] *Alabama Farm Bureau*

---

[2] *Wolfberg, infra*, states, at page 196:

"A review of the authorities persuades us to the view that the cases relied on by appellee constitute the earlier and minority view on this issue. These cases were considered in *Wooten* v. *Central Mut. Ins. Co.* (La. App. 1966), 182 So. 2d 146, which noted that these cases were not persuasive, had been severely criticized, and were expressly refused or failed to be followed in other federal circuits.

"The majority view in this country is represented by *Jenkins* v. *General Acc. Fire & Life Assur. Corp.*, 349 Mass. 699, 212 N.E. 2d 464, 465, 467 (Sup. Ct. Mass. 1965), which stated:

*Mut. Cas. Ins. Co.* v. *Dalrymple* (1959), 270 Ala. 119, 116 So. 2d 924; *Brown* v. *Guarantee Ins. Co.* (1957), 155 Cal. App. 2d 679, 319 P. 2d 69; *American Fire & Cas. Co.* v. *Davis* (Fla. App. 1962), 146 So. 2d 615; *Wolfberg* v. *Prudence Mut. Cas. Co.* (1968), 98 Ill. App. 2d 190, 240 N. E. 2d 176; *Henke* v. *Iowa Home Mut. Cas. Co.* (1959), 250 Iowa 1123, 97 N.W. 2d 168; *Jenkins* v. *General Acci. Fire & Life Assur. Corp., Ltd.* (1965), 349 Mass. 699, 212 N.E. 2d 464; *Lange* v. *Fidelity & Cas. Co.* (1971), 290 Minn. 61, 185 N.W. 2d 881; *Dumas* v. *State Farm Mut. Auto. Ins. Co.* (1971), 111 N.H. 43, 274 A. 2d 781; *Henegan* v. *Merchants Mut. Ins. Co.* (1968), 31 App. Div. 2d 12, 294 N.Y.S. 2d 547; *Gray* v. *Nationwide Mut. Ins. Co.* (1966), 422 Pa. 500, 223 A. 2d 8; *Southern Fire & Cas. Co.* v. *Norris* (1952), 35 Tenn. App. 657, 250 S.W. 2d 785; *Hernandez* v. *Great American Ins. Co.* (Tex. 1971), 464 S.W. 2d 91; *Ammerman* v. *Farmers Ins. Exchange* (1969), 22 Utah 2d 187, 450 P. 2d 460; *Harris* v. *Standard Acci. & Ins. Co.* (D.C.S.D. N.Y., 1961), 191 F. Supp. 538; *Smoot* v. *State Farm Mut. Auto. Ins. Co.* (C.A. 5, 1962), 299 F. 2d 525; *Anderson* v. *St. Paul Mercury Indem. Co.* (C.A. 7, 1965), 340 F. 2d 406; *Gaskill* v. *Preferred Risk Mut. Ins. Co.* (D.C. Md. 1966), 251 F. Supp. 66.

A living insured with no assets suffers injury when an excess judgment is obtained against him because such a judgment will potentially impair his credit, place a cloud on the title to his exempt estate, impair his ability to successfully apply for loans, diminish his reputation and future prospects and the like. See *Crabb* v. *National Indemnity Co.* (S.D. 1973), 205 N.W. 2d 633; *Anderson* v. *St. Paul Mercury Indem. Co., supra;* and *Lange* v. *Fidelity & Casualty Co., supra.*

A solvent estate may also pursue an excess judgment against the insurer since the interests of the estate are involved and a full and fair recovery enables the fiduciary of the estate to distribute assets free from the claim of the holder of

---

" '*** Despite some conflict in earlier cases, the weight of authority is that it is not necessary for the insured to allege that he has paid or will pay a judgment in excess of the policy limits in an action against the insurer for breach of its duty to act in good faith ***.' (Citing *Lee* v. *Nationwide Mut. Ins. Co.*, 286 F. 2d 295 (4th Cir.); *Wessing* v. *American Indem. Co.*, D.C., 127 F. Supp. 775; *Henke* v. *Iowa Home Mut. Cas. Co.*, 250 Iowa 1123, 97 N. W. 2d 168, and other cases.)"

the excess judgment. *Henke* v. *Iowa Home Mut. Casualty Co., supra;* and *Wolfberg* v. *Prudence Mut. Cas. Co., supra.*

A decreasing minority of jurisdictions adopt the "payment rule," which advocates the reasoning that, if an insured did not and cannot pay out any money in satisfaction of an excess judgment, the insured was not harmed, and, therefore, the insurer is not to be held responsible for its bad faith in defending the insured's case.

We adopt the rationale of a majority of jurisdictions, which espouse the "judgment rule."[3]

The seminal case law authority in this area is *Wolfberg* v. *Prudence Mut. Cas. Co., supra* (98 Ill. App. 2d 190). The court, in *Wolfberg,* succinctly gave the rationale for the adoption of the "judgment rule," when it stated, at page 197:

"We are persuaded that the majority view is the sounder one both in justice and logic. The very fact of the entry of judgment itself constitutes damage and harm sufficient to permit recovery. The damage to the estate is the creation of liability for the judgments. The rule of damages is that incurrence is equivalent to outlay.

"* * *

"Were payment or showing of ability to pay the rule, encouragement would be given to an insurer with an insolvent insured to unreasonably refuse to settle. Such a course would impair the use of insurance for the poor man. Further, the fullness or the emptiness of an insured's purse would be an irrelevant and poor measure of liability and performance of duty by the insurer under his contract."

The Court of Appeals, which adopted the "judgment rule," carved a sole exception to the foregoing principle. The court formulated a hybrid exception to the "judgment rule" which sounds much akin to the rationale of the "payment rule." It reasoned that there is no damage to the insured or his estate either now or in the future, because the estate is insolvent, and, therefore, there is no present or future detriment to the estate. Thus, the court concluded that the insurer, appel-

---

[3] The Court of Appeals for Wood County, in *Spitler* v. *State Auto Mut.* (case No. WD 78-27, decided January 26, 1979), also opted for the judgment rule instead of the payment rule. That case was before this court, but the issue presented in the cause *sub judice* was not raised on appeal. See *Spitler* v. *State Auto Mut.* (1980), 61 Ohio St. 2d 242.

lee, is relieved from paying the excess judgment even though it has been adjudicated to have acted in bad faith which resulted in the excess judgment rendered against the estate of Jack Pelfrey.

Because of theoretical and practical considerations, we find no reason to carve this exception.

Theoretically, it would be a windfall to the insurer and "such a course would impair the use of insurance for the poor man." See *Wolfberg, supra,* at page 197.

As to a practical aspect, it is also improper to relieve an insurer from its contractual duty to act in good faith simply because the insured is deceased and insolvent. It is a large assumption that the estate, which at the time of its inventory is insolvent, will remain insolvent. There are numerous instances in which the total net estate may increase and cause an insolvent estate to go through a full administration. For example, the estate of Jack Pelfrey may obtain a solvent status if there are newly discovered assets, such as a lost bank account, unaccounted for real estate in a different jurisdiction or assets such as hidden stock certificates. See R. C. 2109.50. It is also feasible, albeit not common, that the estate of Jack Pelfrey may also inherit money or assets by means of another's will clause granting assets to "Jack Pelfrey or to the estate of Jack Pelfrey." Any one or a series of the foregoing could cause an influx of assets into the estate of Jack Pelfrey raising the insolvent estate to a taxable estate.[4]

As noted herein, if the estate of Jack Pelfrey were solvent, then it or its assignee could sustain an action against the insurer for "bad faith." We find no reason to fashion an exception to the judgment rule when an estate is insolvent and yet allow an action of "bad faith" when an estate is solvent, especially in light of the foregoing, which clearly demonstrates that an insolvent estate may easily become solvent, and, therefore, the assets of the estate would be subject to the claims of the holder of the excess judgment.

In *Farmers Ins. Exchange* v. *Schropp* (1977), 222 Kan.

---

[4] The assignment for the action against appellee from the estate of Jack Pelfrey to the appellants also had a value. The appellants paid $1,000 for this assignment. This is but another example of elevating an insolvent estate to a solvent status.

612, 567 P. 2d 1359, the court, when presented with an identical factual situation as herein, at pages 623-624, stated:

"* * * The court observed that virtually everything that has been written on this subject in the past fifteen years has favored the judgment rule over the prepayment rule.

"* * *

"We do not think that the prepayment rule serves the ends of justice, and decline to adopt it. On the contrary, we see no reason why the insolvency of an insured or his estate should excuse the insurer from exercising the same good faith it would be expected to exercise, were the insured fully financially responsible. * * *" Accord, *Sweeten* v. *National Mut. Ins. Co.* (1963), 233 Md. 52, 194 A. 2d 817.

Therefore, based upon the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

W. BROWN, SWEENEY and C. BROWN, JJ., concur.

CELEBREZZE, C. J., P. BROWN and HOLMES, JJ., dissent.