{¶ 11} I respectfully dissent. The issue in the case is the following: Where an insurer has refused to settle a case, may an injured party, either directly or by assignment sue the insurer for bad-faith refusal to settle if the insured consents to a judgment in excess of the policy limits but is not released from personal liability for the excess amount?
 {¶ 12} This is an issue of first impression for this district. Moreover, the exact issue has not been addressed by the Supreme Court of Ohio either.
 {¶ 13} The leading case in Ohio, Carter v. Pioneer MutualCas. Co. (1981), 67 Ohio St.2d 146, on the subject of bad-faith refusal to settle claims is over 20 years old but provides an excellent stating point for analysis of the issue.
 {¶ 14} In Carter the Supreme Court of Ohio explained:
"Traditionally, there have been two schools of thought concerning the imposition of liability upon an insurer for failing to exercise good faith which results in an excess judgment against the insured.
"An increasing majority of jurisdictions have adopted the `judgment rule,' which advocates the reasoning that an entry of judgment in excess alone is sufficient damage to sustain a recovery from an insurer for its breach of duty to act in good faith in defending the insured's case." (Citations omitted.) Id. at 148-149.
 {¶ 15} The Court proceeded to explain at footnote 2:
"Wolfberg, infra, at page 196:
"A review of the authorities persuades us to the view that the cases relied on by appellee constitute the earlier and minority view on this issue. These cases were considered in Wooten v.Central Mut. Ins. Co. (La. 1966), 182 So.2d 146, which noted that these cases were not persuasive, had been severely criticized, and were expressly refused or failed to be followed in other federal circuits.
"The majority view in this country is represented by Jenkinsv. General Acc. Fire Life Assur. Corp., 349 Mass. 699,212 N.E.2d 464, 465, 467 (Sup.Ct. Mass. 1965), which stated:
"` * * * Despite some conflict in earlier cases, the weight of authority is that it is not necessary for the insured to allege that he has paid or will pay a judgment in excess of the policy limits in an action against the insurer for breach of its duty to act in good faith * * *.' (Citations omitted.) Id. at 149.
 {¶ 16} The Court went on to say:
"A decreasing minority of jurisdictions adopt the `payment rule,' which advocates the reasoning that, if an insured did not and cannot pay out any money in satisfaction of an excess judgment, the insured was not harmed, and, therefore, the insurer is not to be held responsible for its bad faith in defending the insured's case.
"We adopt the rationale of a majority of jurisdictions, which espouse the `judgment rule.'
"The seminal case law authority in this area is Wolfberg v.Prudence Mut. Cas. Co., supra (98 Ill. App.2d 190). The court, inWolfberg, succinctly gave the rationale for the adoption of the `judgment rule,' when it stated, at page 197:
"`We are persuaded that the majority view is the sounder one both in justice and logic. The very fact of the entry of judgment itself constitutes damage and harm sufficient to permit recovery. * * * The rule of damages is that incurrence is equivalent to outlay.
"* * *
"`Were payment or showing of ability to pay the rule, encouragement would be given to an insurer with an insolvent insured to unreasonably refuse to settle. Such a course would impair the use of insurance for the poor man. Further, the fullness or the emptiness of an insured's purse would be an irrelevant and poor measure of liability and performance of duty by the insurer under his contract.'
"* * *
"In Farmers Ins. Exchange v. Schropp (1977), 222 Kan. 612,567 P.2d 1359, the court, when presented with an identical factual situation as herein, at pages 623-624, stated:
"` * * * The court observed that virtually everything that has been written on this subject in the past fifteen years has favored the judgment rule over the prepayment rule.
"` * * *
"We do not think that the prepayment rule serves the ends of justice, and decline to adopt it." Id. at 150-152.
 {¶ 17} In Carter, the Supreme Court of Ohio also determined that a cause of action could be maintained against an insurer for a bad-faith refusal to settle a claim where an excess judgment was rendered against an insolvent estate as the insured. The Court reasoned:
"A living insured with no assets suffers injury when an excess judgment is obtained against him because such a judgment will potentially impair his credit, place a cloud on the title to his exempt estate, impair his ability to successfully apply for loans, diminish his reputation and future prospects and the like.
"A solvent estate may also pursue an excess judgment against the insurer since the interests of the estate are involved and a full and fair recovery enables the fiduciary of the estate to distribute assets free from the claim of the holder of the excess judgment." (Citations omitted.) Carter,67 Ohio St.2d at 149-150.
 {¶ 18} The Court then rejected the theory that an exception should be carved out for an excess judgment against an insolvent estate:
"Because of theoretical and practical considerations, we find no reason to carve this exception.
"Theoretically, it would be a windfall to the insurer and `such a course would impair the use of insurance for the poor man.'
"As to a practical aspect, it is also improper to relieve an insurer from its contractual duty to act in good faith simply because the insured is deceased and insolvent." (Citation omitted.) Id. at 151.
 {¶ 19} The majority in reaching its conclusion does not mention Carter, but relies on the 1995 Sixth Circuit Court of Appeals case of Romstadt v. Allstate Insurance Co., 59 F.3d 608
(C.A. 6, 1995). The Romstadt case is obviously not controlling and is also distinguishable since the consent judgment involved in that case released the insured from all personal financial obligation. The same is not true here.
 {¶ 20} In Romstadt, the insured did not contact her insurer and settled the case for five times the policy limit. Here, Allstate was specifically notified of the claim and provided representation to McCoy and the Mulls in the lawsuit. The attorney Allstate retained participated in the negotiations and represented the insureds in the consent judgment entry.
 {¶ 21} Although in the present case the insured did enter into a consent judgment in excess of the policy limits of insurance, the insured was not released of personal, financial liability for this excess amount as the insured was inRomstadt. In Romstadt, the insured was completely released. The plaintiff agreed to seek recovery solely from the insurer and not pursue the insured whereas here the insured is not released.
 {¶ 22} The most recent case in Ohio on this issue is from the Second Appellate District last year. In Ohio Bar Liab. Ins. Co.v. Hunt, 152 Ohio App.3d 224, 2003-Ohio-1381, discretionary appeal not allowed by Sub nomine at Pollard v. Hunt,99 Ohio St.3d 1468, 2003-Ohio-3669, the insured entered into a consent judgment where he paid a nominal amount in exchange for him assigning any bad-faith claim against the insurer, Ohio Bar Liability Insurance Co. or OBLIC. The court stated:
"OBLIC claims that the trial court nevertheless properly rendered summary judgment in its favor on the bad-faith claim, because Hunt was never exposed to excess liability, as required by law to assert a successful bad-faith claim. With respect to this argument, OBLIC argues that unless the insured has been exposed to an excess judgment by the unreasonable actions of the insurance company, the insured has no claim for bad faith. In support of this contention, the insurance company directs our attention to Romstadt v. Allstate Ins. Co. (N.D. Ohio 1994),844 F. Supp. 361, Doser v. Middlesex Mut. Ins. Co.,101 Cal.App.3d 883, 162 Cal.Rptr.115 (Cal.App. 2d1980), and Smith v.State Farm Mut. Auto. Ins. Co. (Cal.App. 1st1992),5 Cal.App.4th 1104, 7 Cal.Rptr.2d 131.
"We disagree. Under Ohio law an insurer has a duty to act in good faith in processing and paying valid claims. Hoskins v.Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, 276, 6 Ohio B. 337, 452 N.E.2d 1315. Therefore, an insured may bring a cause of action in tort against the insurer for breach of that duty. Id. To successfully assert a bad-faith claim, the insured must show that the insurer failed to exercise good faith in processing a claim by refusing to pay or to defend the claim, when not based upon `circumstances that furnish reasonable justification therefore.' Zoppo v. Homestead Ins. Co., 71 Ohio St.3d 552,1994 Ohio 461, N.E.2d 397. OBLIC has not cited any Ohio authority, nor have we found any, requiring the existence of an excess judgment as a predicate for a cause of action for bad faith.
"It is true that some courts have concluded that an excess judgment must be in existence before a bad faith cause of action can be stated. OBLIC cites Romstadt, Doser, and Smith, which each stand for the proposition that an insured may not be sued for bad faith refusal to settle unless an excess judgment has been entered. But each presupposes that the insurer's breach of implied duties of good faith and fair dealing are not complete until an excess judgment has been entered.
"We disagree with this proposition. The Ohio Supreme Court has not restricted bad-faith claims in this manner, and we conclude that it would be unwise to do so. Cf. Camlot by the Bay Condo.Owners' Assn. v. Scottsdale Ins. Co. (Cal.App. 2d 1994),27 Cal.App.4th 33, 32 Cal.Rptr.2d 354. By applying this logic, insurers could, with impunity, act as unreasonably as they choose, leaving an insured to cover the costs of defense, so long as no excess judgment is ultimately recovered. This would do little to facilitate settlement, since an insured would often be without the means to offer what the tort victim reasonably demands in settlement. Permitting an insurer to act unreasonable with impunity would also lead to further inequality in the bargaining power that an insurer holds over its insured, by virtue of superior resources.
"The potential for a bad-faith claims acts as an incentive for insurers to act in a reasonable manner in defending and settling claims. Those insurers who fail to do so act at their own peril and will not be protected simply because an insured, forced unreasonably to provide for his own defense, avoids a judgment in excess of policy limits." Hunt, at ¶¶ 27-31.
 {¶ 23} Obviously, the law is not settled in Ohio, as the Supreme Court has yet to rule on the exact issue before this Court. However, Carter and Hunt, appear to be at odds with the reasoning of the majority.
 {¶ 24} Clearly, there are critical concerns that come into play when an insured settles with a plaintiff and assigns its rights to a bad-faith claim against the insured. The most obvious problem "is the potential for fraud or collusion on the part of the plaintiff and the insured directed against the carrier."
"If the assignment and covenant not to execute are exchanged before a judgment, there is no incentive for either party to engage in the kind of adversarial process which normally ensures that a settlement or judgment accurately reflects the value of the case. The plaintiff will always strive for a judgment admitting liability and a large amount of damages. The usual check in this situation is the position of the insured, who has his own incentive to minimize loss. But since the covenant not to execute relieves the insured of personal liability, his only incentive is to agree to whatever terms will persuade the plaintiff to abandon his suit. The correlative incentive for the plaintiff to agree is the potential for increased recovery by pursuing the insured's bad faith claim against the carrier. The final result is that neither party is motivated to seriously negotiate over issues of damages and liability because the end goal is to structure the deal so that the carrier, a nonparty to the agreement, pays.
"The possible forms that fraud or collusion between plaintiff and insured may take are, as one court has suggested, limited only by `the ingenious assistance of counsel.' Obvious examples are cases in which the plaintiff and insured agree to a highly inflated damage figure which is then entered by the court. Increasingly, default judgments or uncontested trials are preferred to straight settlement agreements, but in either case, there is no real opposition to the damage figure named by the plaintiff. In a similar vain, certain facts or admissions may be stipulated to show liability and coverage. This is most dangerous when the plaintiff has a weak case because the carrier typically has no right to later contest an admission of liability.
"Carriers also frequently complain of `set-up' settlement offers, which the plaintiff makes after coverage is denied in an attempt to manipulate the carrier into acts that can later be cited as evidence of bad faith. A settlement offer may be made early in the discovery process, when the carrier has not had adequate time to ascertain the value of the claim or fully establish facts concerning the insured's liability. Settlement offers may remain open for an unreasonably limited time. While a plaintiff has the power to control the terms and conditions of a settlement offer, when these tactics are combined with a subsequent refusal to accept the same settlement later in negotiations and with an assignment of the insured's rights to the plaintiff, the situation looks less like a bargaining tactic than an attempt to lay the groundwork for a future bad faith suit." Note, Assignments of Rights and Covenants Not to Execute in Insurance Litigation (1997), 75 Tex.L.Rev. 1373, 1385-1386.
 {¶ 25} Obviously, some of these concerns could be lessened by the use of safeguards in the system. In a bad-faith suit resulting from a settlement or consent judgment, the insurer must be allowed to contest the amount of the agreed upon damages in the bad faith suit. Id. The burden of proof should be placed on the plaintiff-assignee to prove the reasonableness of the damages. Id. Also, the insurer should be allowed to raise the affirmative defense of fraud and/or collusion.
 {¶ 26} However, without further guidance from the Ohio Supreme Court, an insured in Ohio may assign its bad-faith claim against an insurer based on an excess consent judgment as long as the insured remains personally financially liable under the consent judgment. Since, in my opinion, appellee was not prevented as a matter of law from filing suit, I would affirm.