LOGAN, Trustee, Appellant,

v.

**ALLSTATE INSURANCE COMPANY, Appellee.**

[Cite as *Logan v. Allstate Ins. Co.*, 169 Ohio App.3d 754, 2006-Ohio-6431.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–148.

Decided Dec. 7, 2006.

Volkema Thomas, L.P.A., and Janet L. Larkin, for appellant.

Edwin J. Hollern Co., L.P.A., and Edwin J. Hollern, for appellee.

WHITESIDE, Judge.

{¶ 1} Plaintiff-appellant, William P. Logan, Chapter 7 Trustee of the bankruptcy case of Tiffany R. Tyler ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendant-appellee, Allstate Insurance Company ("Allstate"), and raises a single assignment of error as follows:

> The trial court erred to the substantial prejudice of plaintiff-appellant William B. Logan in granting defendant's motion for summary judgment filed January 27, 2006.

{¶ 2} This case arises from a collision between an automobile driven by Tiffany R. Tyler and an automobile driven by James Jeffries, who was injured in the accident. Jeffries and his spouse filed an action seeking to recover damages against appellant. At the time, appellant was insured by Allstate, who undertook her defense through an attorney. Prior to trial, Jeffries made an offer to settle for $6,000, but Allstate declined to pay that amount and instead offered only $2,500 to settle. Jeffries claimed $2,897 in medical receipts, $12,800 in lost income, and $3,600 for damaged tools, as well as damages for his bodily injuries. The case proceeded to trial with liability not being contested and resulted in a jury verdict of $49,000 ($40,000 for Jeffries and $9,000 for his spouse) against Allstate's insured, appellant. Allstate did partially satisfy the judgment by paying the policy limits of $12,500, shortly after the verdict, leaving a deficiency of $36,500 for appellant to pay.

{¶ 3} Jeffries had underinsurance coverage with State Farm, which on November 3, 2003, paid Jeffries the remaining $36,500 of the judgment not paid by Allstate, and State Farm became subrogated to Jeffries's claim in that amount against Tyler.

{¶ 4} Shortly after payment by Allstate of the policy limit of $12,500 to Jeffries, trial counsel, by letter, notified Tyler of the payment and partial satisfaction of the judgment and that $36,500 remained for her to pay and suggested that she might desire to consult a bankruptcy attorney. Tyler called her mother, seeking her advice. Her mother told her she might need to file bankruptcy.

{¶ 5} Tyler did consult a bankruptcy attorney, who filed for bankruptcy on her behalf and included the judgment of Jeffries as one of her debts, listing the full $49,000 judgment as the amount. The bankruptcy was filed on September 9, 2003.

{¶ 6} After the original interim trustee declined to serve, the bankruptcy court appointed William B. Logan as trustee of Tyler's bankruptcy estate. As part of the administrator of the bankruptcy estate, appellant filed this action seeking to recover from Allstate the amount of the judgment remaining after Allstate's payment of policy limits.

{¶ 7} Allstate filed a motion for summary judgment based upon its contention that no damages were suffered by Tyler as a result of the alleged wrongful failure to settle within policy limits prior to trial because State Farm had never sought to recover upon the subrogated claim from Tyler and instead had "waived" its claim. Allstate submitted an affidavit of a claims representative of State Farm dated October 27, 2005, which states: "State Farm waived its right to subrogation against Tiffany Tyler and State Farm did not present a claim in the bankruptcy of Tiffany Tyler." The affidavit also states that "State Farm closed its file on this matter and will not present any claim for reimbursement for its payment of $36,500 to James Jeffries and his counsel."

{¶ 8} In a deposition, however, the same claims representative of State Farm gave a slightly different story when asked whether State Farm would attempt to seek leave to make a delayed bankruptcy filing in order to obtain payment of the subrogated judgment against Tyler. He responded that he did not "have the final authority to make the call on that, * * * but based on what has happened on this case and that we have decided not to pursue subrogation, I do not believe we would pursue this any further." When asked whether the right of subrogation would be asserted if the bankruptcy estate had enough money, he replied that "that would be a decision my superiors would make. That would not be my decision."

{¶ 9} The trial court sustained Allstate's motion for summary judgment in a written decision containing a provision that if, before the close of Tyler's bankruptcy estate, State Farm decides and is allowed to file a claim pursuant to its subrogation rights, the court will allow plaintiff the opportunity to petition the court for reconsideration of the present ruling and the reopening of this case.

{¶ 10} One basic issue before this court upon this appeal raised by Allstate is whether the existence of an unpaid excess judgment against the insured is a prerequisite to the bringing of this bad-faith claim. Allstate contends that "there simply is no valid bad faith claim that can be asserted by the trustee in the case, sub judice, because the judgment has been fully satisfied." The simple answer is that the judgment still exists of record. Although there was a partial satisfaction of judgment entered when Allstate paid Jeffries its policy limits, there is no satisfaction of judgment of record with respect to the $36,500 excess judgment possibility because of State Farm's right to subrogation. Also, there has been no release signed by Jeffries (nor even State Farm) releasing Tyler from liability. The more complete answer is that the existence of an unpaid judgment is not a prerequisite for a bad-faith excess judgment claim. If it were, a judgment debtor who had the ability to pay a bad-faith excess judgment would be unable to collect from his insurer if he paid the judgment (whether or not voluntarily) prior to bringing and completing a case against his insurer for the excess judgment.

{¶ 11} However, Tyler is indigent and has filed for bankruptcy. When she did so, her claim against Allstate became one of the assets of her bankruptcy estate, and the trustee is the proper party to pursue that claim. Who will share in any recovery by the trustee will be determined by the Bankruptcy Court, and State Farm will receive only such amount as the Bankruptcy Court determines.

{¶ 12} The trial court appeared concerned that creditors of Tyler might benefit from the recovery, rather than State Farm receiving full recovery. That is not an issue here, nor a matter to be considered in determining Allstate's motion for summary judgment.

{¶ 13} The Supreme Court of Ohio has adopted the judgment rule as the foundation for a claim against the insurer for recovery of the portion of a judgment in excess of policy limits when the insurer could have settled the case for less than policy limits but wrongfully declined to do so.

{¶ 14} There have been numerous cases both here in Ohio and elsewhere involving the liability of an insurer for an excess judgment (one in excess of policy limits) when there has been wrongful representation or failure to settle within policy limits (referred to as bad faith). However, the guideline for Ohio courts is the decisions of the Supreme Court of Ohio and specifically, the landmark case of

*Carter v. Pioneer Mut. Cas. Co.* (1981), 67 Ohio St.2d 146, 21 O.O.3d 92, 423 N.E.2d 188, paragraphs one and two of the syllabus, which reads as follows:

1. An entry of judgment against an insured's estate in excess of the insurance policy limits is sufficient damage alone to sustain a recovery from the insurer if it is adjudicated that there was a breach of duty by the insurer in defending the insured's estate.

2. Upon the adjudication of an insurer's bad faith in defending an insured's estate, an excess judgment may be recovered from the insurer despite the insolvency of the estate.

{¶ 15} The *Carter* court also expressly followed the judgment rule rather than the payment rule as the foundation for an action to recover an excess judgment from an insurer. Under the judgment rule, the claim for relief accrues immediately upon the entering of the excess judgment against the insured. Under the payment rule, the claim for relief does not arise until the insured has paid the excess judgment, and there is no claim for an excess judgment if the insured is unable to pay the excess judgment. The payment rule and its progeny are not the law of Ohio. There are several decisions from other Ohio courts of appeals and courts of other states that are not in accord with *Carter*. However, most decisions from other jurisdictions are in accord with *Carter*. It serves no purpose to refer to all those cases here, since *Carter* states the law of Ohio.

{¶ 16} Allstate's contentions that there must be an existing unpaid judgment for recovery against an insured is inconsistent with the judgment rule. The existence of the judgment for an amount in excess of policy limits is the foundation of the claim, not payment of that judgment.

{¶ 17} Payment by a third party of the excess judgment might not necessarily extinguish the insured's claim against the insurer for the excess judgment, depending upon the circumstances, and will not be extinguished if the third party becomes subrogated to the judgment creditor's claim. Although apparently conceding that State Farm, by paying Jeffries, became subrogated to Jeffries's judgment against Tyler, Allstate contends that plaintiff's claim has been extinguished because (1) State Farm has neither pursued the judgment against Tyler nor filed a claim in the bankruptcy case and (2) its claims representative stated that the claim has been waived, but that the final decision of whether to pursue the claim is up to his superiors.

{¶ 18} We find no authority for the proposition that Tyler's excess judgment claim has been extinguished by State Farm's inaction, at least in the absence of a formal release or waiver executed by State Farm. The trial court recognized the continued right of State Farm to seek to recover the excess judgment that it paid its insured, but entered judgment dismissing Tyler's case

with a provision that it would be reopened if State Farm decides to and does pursue its claim in the bankruptcy proceedings. However, the more appropriate finding is that the motion for summary judgment upon this basis is premature because of the uncertainty of State Farm's future actions. When and if State Farm releases Tyler from any liability (or files a satisfaction of judgment), State Farm's subrogated judgment claim will be extinguished.

{¶ 19} However, there remains the issue of whether State Farm's decision not to pursue recovery from Tyler (or her bankruptcy estate) at this time, or even its formally releasing Tyler and her bankruptcy estate from liability, will render moot Tyler's claim against Allstate for the excess judgment.

{¶ 20} As *Carter* holds, the claim for relief arises upon the entry of judgment, and recovery is proper even if the insured is insolvent.

{¶ 21} One real issue here is who is to benefit from a decision of a judgment creditor of an excess judgment against an insurance company's insured not to pursue collection of the excess judgment and, in effect, to make a "gift" of the excess judgment by not pursuing or collecting the excess judgment. Is the beneficiary the insurer or the insured, where there has been "bad faith" representation by an insurer in defending the insured?

{¶ 22} *Carter* expressly holds that the claim of the insured to recover an excess judgment from the insurer arises upon entry of the excess judgment and constitutes damage to support a recovery by the insured from the insurer in case of "bad faith" representation. State Farm obviously contends that the insurer should benefit. But this view has the same problem that an insolvent insured presents, namely, that an insurer who has an insolvent insured would automatically escape liability for its failure that created the excess judgment. On the other hand, permitting recovery of the full excess judgment would create a windfall for the insured who has escaped being required to pay the excess judgment either to the judgment creditor or his insurer. Under these circumstances, it may well be better and more fair to limit recovery by the insured to compensation for the damage he or she has sustained because of the excess judgment. We need not determine that issue here, because this case is before us upon appeal of a summary judgment granted to Allstate, the insurer, upon the basis that there are no possible damages that Logan, as trustee of Tyler's bankruptcy estate, could possibly recover upon trial of the case. No issues have been raised as to whether Allstate breached its duty to represent and defend Tyler in the underlying action by failing to accept Jeffries's offer to settle their case for $6,000 (less than half of the $12,500 policy per-person limit). Proceeding to trial of the case against Tyler rather than accepting the $6,000 offer to settle resulted in a total judgment of $49,000, more than eight times the amount for

which the case could have settled, and left Tyler personally responsible for the extra $36,500, which she avoided only by filing for bankruptcy protection (unless it's assumed that State Farm would have paid the excess judgment and "waived" any recovery from Tyler).

{¶ 23} Even if the insurer itself eventually pays the full excess judgment, some courts have held that this does not preclude a claim against the insurer for its failure to reasonably defend properly by rejecting an offer by the injured party to accept an amount within the policy limits in full settlement when the trial results in a verdict greatly in excess of the policy limits. See, e.g., *Campbell v. State Farm Mut. Ins. Co.* (Utah App.1992), 840 P.2d 130.

{¶ 24} The trial court erred in granting summary judgment because there are genuine issues of material fact. This court reviews a judgment granting summary judgment de novo but is bound by the stated law of *Carter*, supra, 67 Ohio St.2d 146, 21 O.O.3d 92, 423 N.E.2d 188, paragraph one of the syllabus. Under *Carter*, the entry of the judgments gives rise to sufficient damage to sustain a recovery from an insurer for bad-faith representation. The amount of such damages constitutes an issue for the jury, which may find no damages in some cases. Even accepting Allstate's argument that State Farm will not ever attempt to collect any portion of the payment to Jeffries, there remains at least the possible damages of the expense of Tyler's pursuing bankruptcy to avoid the consequences of the excess judgment even if the other possible damages mentioned in *Carter* do not exist.

{¶ 25} *Carter* also determined that the bad-faith claim against an insurer is not precluded by the insolvency of the insured. Of course, the bankruptcy remedy is available only to one who is insolvent. *Carter* mentions one of the reasons for this rule is that at some point the insured may no longer be insolvent. However, *Carter* also mentioned humiliation, embarrassment, and the inability to obtain credit as damage factors. In *Carter*, supra, 67 Ohio St.2d at 149, 21 O.O.3d 92, 423 N.E.2d 188, the court stated:

A living insured with no assets suffers injury when an excess judgment is obtained against him because such a judgment will potentially impair his credit, place a cloud on the title to his exempt estate, impair his ability to successfully apply for loans, diminish his reputation and future prospects and the like.

{¶ 26} The *Carter* court also commented on the Allstate argument that there is no damage, stating that this argument "sounds much akin to the rationale of the 'payment rule.'" *Carter*, 67 Ohio St.3d at 151, 21 O.O.3d 92, 423 N.E.2d 188. *Carter* also rejected a similar argument (which it termed an exception to the judgment rule), stating that "[b]ecause of theoretical and practical considerations, we find no reason to carve this exception." Id.

{¶ 27} Accordingly, appellant's assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court with instructions to overrule Allstate's motion for summary judgment and to proceed with such further proceedings as may be appropriate.

Judgment accordingly.

BRYANT and TRAVIS, JJ., concur.

WHITESIDE, J., retired, of the Tenth Appellate District, sitting by assignment.