OPINION
{¶ 1} Defendant-appellant, David L. Dillingham, appeals from the judgment of the Montgomery County Court of Common Pleas following a jury trial, wherein the jury rendered a verdict in favor of Plaintiffs-appellees, Debra Wolfe and Namon Johnson, on their claims of fraud and promissory estoppel. *Page 2 
 {¶ 2} The facts underlying this appeal are as follows:
 {¶ 3} In February 1998, Loyalty Transfer and Storage, Inc. ("Loyalty"), a Dayton, Ohio steel storage company, filed a complaint against Wolfe, Johnson, and DDD Distributing Co., a sole proprietorship of Dillingham, alleging tortious interference with contractual relationships, misappropriation of trade secrets, and civil conspiracy to tortiously interfere with contracts and to misappropriate trade secrets. These charges stemmed from events involving the transfer of ownership of a building at 2333 McCall Street in Dayton. Loyalty leased the premises and employed Wolfe as a secretary and Johnson as a crane operator. When Loyalty became unable to pay the rent, the company inquired about moving part of its business to a building owned by Dillingham in Hamilton, Ohio. After several discussions, Dillingham refused to lease his building to Loyalty upon learning that it was being evicted for non-payment of rent. Instead, he negotiated to purchase the McCall Street building from its owner and established his own steel storage company, continuing to employ Wolfe and Johnson in their respective capacities.
 {¶ 4} When Wolfe and Johnson learned that they were named parties to Loyalty's complaint, they turned to Dillingham, who provided that he would hire his attorney, H. Vincent Walsh, to take care of the case. The parties, thereafter, were scheduled to appear at depositions — Wolfe's deposition was to take place on March 19, 1998, while Johnson and Dillingham were to appear the following day. Again, when Wolfe and Johnson received notice of their depositions, they sought the advice of Dillingham. At trial, both Wolfe and Johnson testified that Dillingham told them not to attend the depositions based on the advice of retained counsel. They further testified that Dillingham indicated the depositions had been *Page 3 
postponed. In opposition, Dillingham stated that he told Wolfe and Johnson that he would not be going to the depositions, but whether they attended was up to them. It should be noted that Walsh claimed he had not been retained at this point in time.
 {¶ 5} On March 20, 1998, Loyalty filed a motion for default judgment on account of the defendants' failure to appear for their depositions. Seven days later, the trial court entered an order granting Loyalty's motion. Walsh subsequently moved to set aside the default judgment, which was denied.
 {¶ 6} Walsh, Wolfe and Johnson attended a damages hearing before a magistrate in July of 1998. From that point on, all court documents pertaining to this suit were served to Walsh. Following the hearing, the parties met at Walsh's office in Hamilton, Ohio. Walsh testified that Wolfe told him not to do anything, i.e., file an appeal, because she had no assets, and Johnson informed him that he was filing for bankruptcy. Walsh further testified that he told both Wolfe and Johnson that if they wanted to retain him at that time, it would cost $1500.00; he claims they declined his offer. To the contrary, Wolfe and Johnson testified at trial that Walsh did not discuss the cost of an appeal or attorney's fees, nor did he indicate that an appeal would not be filed. They further provided that they did not instruct Walsh not to file an appeal on their behalf.
 {¶ 7} On July 28, 1998, the magistrate issued her decision setting the damages at $25,000.00. According to Wolfe and Johnson, Dillingham indicated that he would pay the judgment in order to settle the case. In fact, Dillingham himself testified that he intended to pay, thus eliminating any reason for Wolfe and Johnson to appeal. Before any payments were made, however, the magistrate amended her decision and set the cost of damages at *Page 4 
$300,000.00. This change came about due to an ex parte communication between the court and Loyalty's attorney, Kent J. Depoorter, at which time Depoorter pointed out that the magistrate's decision erroneously assessed damages at $25,000.00 per one year, instead of $25,000.00per month for one year.
 {¶ 8} No appeal followed. Dillingham testified at trial that Walsh ceased his representation of Wolfe and Johnson immediately after the judgment was increased. He also provided that both Wolfe and Johnson did not care about appealing the decision.
 {¶ 9} In November of 1998, certificates of judgment were rendered against Wolfe and Johnson. Neither of them, however, was aware that the magistrate's decision had increased from $25,000.00 to $300,000.00. According to Wolfe, following the initial judgment, Dillingham responded to her inquiries by simply stating that the case had been dropped. It wasn't until Wolfe decided to call the courthouse in January 1999 that Wolfe and Johnson learned of the $300,000.00 judgment. At that point, the time for an appeal had passed.
 {¶ 10} On February 8, 1999, Wolfe and Johnson filed a complaint against Walsh alleging legal malpractice. They also filed a complaint against Loyalty's attorneys, Depoorter and Little, in a separate suit for abuse of process. This Court eventually determined that they had no claims against Depoorter and Little, where the proper remedy would have been to appeal the judgment rendered in favor of Loyalty. See Wolfe v.Little (Apr. 27, 2001), Montgomery App. No. 18718, 2001 WL 427408. In August of that same year, Loyalty sought leave to intervene in order to protect its interest as a judgment creditor.
 {¶ 11} Thereafter, Wolfe and Johnson filed (1) an answer to Loyalty's claim, (2) a counterclaim against Loyalty for abuse of process, (3) a third-party complaint against *Page 5 
Dillingham, and (4) a third-party complaint against Loyalty's attorneys. The counterclaim against Loyalty was subsequently resolved when the trial court granted summary judgment in favor of Loyalty, and the third-party complaint against Depoorter and Little was voluntarily dismissed.
 {¶ 12} The matter proceeded to a trial by jury in July 2002. At the conclusion of the trial, the jury rendered a verdict against Walsh, and in favor of Wolfe and Johnson, individually, for legal malpractice in the amount of $414,493.14. Furthermore, the jury found against Dillingham, and in favor of Wolfe and Johnson, individually, for promissory estoppel in the amount of $414,493.14, and for fraud in the amount of $414,493.14. The jury also found in favor of Wolfe and Johnson, individually, for punitive damages in the amount of $100,000.00, plus attorney's fees.
 {¶ 13} Within two weeks, Walsh moved for judgment notwithstanding the verdict. At the same time, Wolfe and Johnson filed motions to approve the bill of costs, for prejudgment interest, and for an award of attorney's fees against Dillingham. In August 2002, the court entered its judgment against Walsh and Dillingham based on the jury's verdicts.
 {¶ 14} Dillingham filed a motion for judgment notwithstanding the verdict and a motion for a new trial in January 2003. Approximately one year later, the trial court denied Walsh's Motion for Judgment Notwithstanding the Verdict and Dillingham's Motion for Judgment Notwithstanding the Verdict and Motion for a New Trial. Dillingham then filed a notice of appeal, followed by a request for this Court to determine whether we had jurisdiction to hear the appeal. Upon consideration, we dismissed the appeal on December 6, 2004 for want of a final appealable order, finding that Dillingham's third-party complaint and/or cross-claim *Page 6 
against Loyalty, filed on March 1, 2000, remained pending, as did Loyalty's counterclaim against Wolfe and Johnson.[1]
 {¶ 15} Dillingham voluntarily dismissed his third-party complaint and/or cross-claim against Loyalty in October of 2005. On May 19, 2006, the trial court filed a final judgment entry including the stipulation entered by Loyalty, Wolfe and Johnson. Dillingham filed a timely notice of appeal on June 16, 2006, assigning two errors for our review:
 {¶ 16} I. "There was insufficient evidence to support the jury's damage award and the jury's damage award was against the weight of the evidence."
 {¶ 17} II. "There was insufficient evidence to support an award of punitive damages."
 {¶ 18} In Gevedon v. Ivey, 172 Ohio App.3d 567, 2007-Ohio-2970,876 N.E.2d 604, this Court concluded that "the issues of `sufficiency of evidence' and `manifest weight' have been essentially merged in civil cases, leaving appellate courts with the option of conducting a *Page 7 
`civil' manifest-weight analysis, in which the court reviews the trial court's rationale and the evidence the trial court has cited in support of its decision." Id. at ¶ 60. Thus, the appropriate standard of review is whether competent, credible evidence exists to support the trial court's decision. Id. Upon consideration, we conclude that there was competent, credible evidence presented at trial to demonstrate that the jury's damage award was appropriate. Accordingly, the judgment of the trial court will be affirmed.
 {¶ 19} Preliminarily, Dillingham questions whether this Court has jurisdiction to entertain the present appeal. Specifically, Dillingham asserts that the language of the stipulation by Loyalty, Wolfe and Johnson that is included in the court's final judgment entry is insufficient to constitute a judgment.
 {¶ 20} In support of his argument, Dillingham cites to Harkai v.Scherba Idustries, Inc. (2000), 136 Ohio App.3d 211, 736 N.E.2d 101. There, the Ninth District dismissed an appeal for lack of jurisdiction, where the trial court's purported judgment entry simply indicated approval of a magistrate's decision. Id. at 222. The court of appeals concluded that the subject order failed to disclose both the manner in which the trial court resolved the issues before it and the relief afforded the parties to remedy the dispute between them. Id. at 221. In reaching this conclusion, the court clearly summarized the nature and purpose of a judgment: "Before this court can exercise its appellate jurisdiction to review any case, we must find that the order being appealed is (1) `final' pursuant to R.C. 2505.02, as further defined by case law; (2) issued by a `court of record;' that is, signed by the court and journalized; and (3) appealable pursuant to R.C. 2505.03 and the Appellate Rules of Procedure. When reviewing whether the order is final, we ask whether the essential functions *Page 8 
of a judgment have been fulfilled. Does the order terminate a claim between the parties to the action? To do so, the order must contain a statement of the relief to which the parties are entitled. Does the order provide notice of the parties' rights, duties, and obligations? In this regard, the language used in the judgment must be sufficiently complete so that the parties can enforce their rights and obligations through execution on that judgment." Id. at 219.
 {¶ 21} Dillingham's jurisdictional argument in the present appeal is unpersuasive. Guided by the foregoing questions, we find that the trial court's judgment entry is a final, appealable order. First, it terminates the claim between Loyalty, Wolfe and Johnson. The stipulation submitted by these parties contains a definite statement of the relief afforded Loyalty — partial assignment of the judgment against Dillingham, Walsh, and Condo Walsh, so as to satisfy the creditor's bill filed by Loyalty. Moreover, the order provides sufficient notice of Loyalty's right to a partial assignment of the judgment and Wolfe's and Johnson's duties and obligations to satisfy their debt to Loyalty by partially assigning their judgment against Dillingham, Walsh, and Condo Walsh. Accordingly, we find that this Court has jurisdiction to entertain the present appeal, and we proceed to the merits of the case.
 {¶ 22} In his first assignment of error, Dillingham contends that there was insufficient evidence to warrant the jury's damage award, and that award is against the manifest weight of the evidence. At the core of this argument is the fact that neither Wolfe nor Johnson has paid any part of the default judgment rendered against them, although there have been certificates of judgment filed resulting in judgment liens attached to their real property. According to Dillingham, Wolfe and Johnson are required to prove that they each suffered actual damages, i.e. "monetary payments," on account of Dillingham's actions. He further *Page 9 
asserts that the trial court's dismissal of the plaintiffs' indemnification claim because they had yet to make payments on the underlying judgment demonstrates that the evidence was insufficient to prove an actual loss of $414,493.14 under their claims of fraud and promissory estoppel.
 {¶ 23} In response, Wolfe and Johnson argue that "actual damages" under the fraud and promissory estoppel claims can be distinguished from "actual damages" in an indemnification case, where a prima facie element in an indemnification claim is that a plaintiff proves he or she has paid the money sought to be indemnified. See Firemen's Ins. Co. ofNewark, N.J. v. Anfo/(1984), 14 Ohio App.3d 428, 14 OBR 547,471 N.E.2d 831. With this in mind, Wolfe and Johnson contend that the judgment itself is injurious, for it constitutes a debt upon each of them in the amount of $300,000.00 plus interest. For the following reasons, we agree with the appellees.
 {¶ 24} This case appears to be one of first impression, as neither party has directed us to, nor have we uncovered in our independent research, any case law in Ohio that directly resolves the issue at hand. Thus, we turn to the law of other jurisdictions for guidance.
 {¶ 25} A number of jurisdictions have adopted a standard called "the judgment rule" in the context of legal malpractice claims. Under the "judgment rule," a person who suffers the entry of a judgment against him as a result of his lawyer's misconduct suffers a legal injury or actual damage, and can bring an action for legal malpractice, despite the fact that the judgment remains unpaid at the time of trial. SeeMontfort v. Jeter (Tex. 1978), 567 S.W.2d 498; Shipman v. Kruck
(Va. 2004), 593 S.E.2d 319; Pickens, Barnes Abemathy v. Heasley
(Iowa1983), 328 N.W.2d 524; Roebuck v. Steuart (Md.App. 1988),544 A.2d 808; Gruse v. *Page 10 Belline (Ill.App. 1985), 486 N.E.2d 398.
 {¶ 26} In Montfort, for example, no evidence was presented during trial to support the jury's finding of actual damages, where the plaintiff alleged that his attorney had wrongfully agreed to a judgment of $19,939.51 against him. 567 S.W.2d at 499. The jury awarded the plaintiff $40,000.00 as compensation, which included accrued interest. Id. Regardless of the fact that the plaintiff admitted he had not paid any part of the judgment, or that execution had not been attempted on any of the plaintiffs property, the Supreme Court of Texas held that the existing judgment itself amounted to some evidence of actual damages. Id. at 500. Likewise, the Supreme Court of Virginia applied the "judgment rule" in Shipman to the statute of limitations for a legal malpractice claim. There, the court required the plaintiffs to bring their malpractice action within three years of the date they suffered a judgment from their attorney's alleged breach of duty, as opposed to the date they made a payment on the judgment — extending the statute of limitations to approximately six years from the breach.Shipman, 593 S.E.2d at 508. Overruling the jurisdiction's previous use of "the payment rule," i.e., a judgment for money damages suffered by a client as the proximate result of his lawyer's negligence constitutes actual damages in a legal malpractice suit only to the extent such judgment has been paid, the court provided the following:
 {¶ 27} "* * * a client who suffers the entry of a judgment against him indeed suffers a legal injury or damage. There is little remote, speculative, or contingent about a money judgment. Indeed, it is a legal creature of singular dignity. Such a judgment calls into existence what did not exist before, viz., a liquidated debt. Except for jurisdictional defect, that judgment and the debt it creates cannot be collaterally attacked and is actionable in every *Page 11 
state. The recorded judgment constitutes a continuing lien (securing the debt and interest as it accrues) on the debtor's assets (presently owned and later acquired), a lien that is enforceable by public sale." Id. at 508-09.
 {¶ 28} The Supreme Court of Ohio has applied a similar standard in insurance matters. See Carter v. Pioneer Mut. Cas. Co. (1981),67 Ohio St.2d 146, 21 O.O.3d 92, 423 N.E.2d 188. There, the court adopted the "judgment rule" in holding that "[a]n entry of judgment against an insured's estate in excess of the insurance policy limits is sufficient damage alone to sustain a recovery from the insurer if it is adjudicated that there was a breach of duty by the insurer in defending the insured's estate." Id. at paragraph one of the syllabus. Like the court in Shipman, supra, the supreme court rationalized its decision by noting the effects that excess judgments have on insured parties — impaired credit, a cloud on the title of exempted estates, inability to successfully apply for loans, and diminished reputation and future prospects. Id. at 149.
 {¶ 29} In light of the foregoing discussion, we find the "judgment rule" applicable in the instant matter. Here, the evidence at trial demonstrated that Wolfe and Johnson suffered a judgment against them for the amount of $300,000.00 plus interest due to the advice of Dillingham upon which they relied and the misconduct of Dillingham's attorney. The evidence also clearly showed that no money had been paid to satisfy this judgment by any party. Nevertheless, the jury found against Dillingham and Walsh for this exact amount, plus interest, reflecting the loss endured by Wolfe and Johnson.
 {¶ 30} Specifically, the jury found that $300,000.00 plus interest was sufficient damages to satisfy the claims of fraud and promissory estoppel against Dillingham. The *Page 12 
elements of an action in fraud are "(a) a representation or, where there is a duty to disclose, concealment of a fact (b) that is material to the transaction at hand (c) made falsely with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximatelycaused by the reliance." (Emphasis added.) Langford v. Sloan,162 Ohio App.3d 263, 2005-Ohio-3735, 833 N.E.2d 331, at ¶ 10, citing Gaines v.Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709. Dillingham's sole argument is that Wolfe and Johnson have failed to provide sufficient evidence demonstrating the damages element of this claim. Furthermore, to establish a claim of promissory estoppel, the plaintiffs must prove" `(1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claimingreliance is injured as a result of the reliance on the promise. `" (Emphasis added.) Shepard v. Griffin Services, Inc. (May 10, 2002), Montgomery App. No. 19032, 2002 WL 940110, at *14, quoting Weiper v.W.A. Hill Assoc. (1995), 104 Ohio App.3d 250, 260, 661 N.E.2d 796. Again, Dillingham's argument focuses on the appellees' failure to demonstrate an injury.
 {¶ 31} Utilizing the "judgment rule," we find that there is competent and credible evidence to support the jury's verdict. The judgment rendered against Wolfe and Johnson, although yet to be paid, constitutes a debt in the amount of $300,000.00 plus interest. Such judgment is a lien upon the land and tenements of each judgment debtor. See R.C.2329.02. It will potentially tarnish their credit and impair their ability to apply for loans. Johnson's testimony at trial has demonstrated that this latter effect has already come into being, where *Page 13 
an application for student loans concerning his son was denied on the basis of his credit history. Thus, we believe the existing judgment against Wolfe and Johnson is evidence of actual damages.
 {¶ 32} Accordingly, Dillingham's first assignment of error is overruled.
 {¶ 33} In his second assignment of error, Dillingham argues that there was insufficient evidence to support the jury's award of punitive damages in conjunction with the appellees' fraud claim. However, the appellees point out that Dillingham failed to raise this issue before the trial court at the close of all evidence. The record further demonstrates that Dillingham neglected to raise this issue regarding punitive damages in his subsequent motion for judgment notwithstanding the verdict and/or motion for a new trial. It is well-established that alleged errors are waived for purposes of appellate review unless they have been preserved on the record in the trial court. Schade v. CarnegieBody Co. (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 436 N.E.2d 1001. Where error is waived, however, reversal on appeal may be predicated on plain error. McCoy v. Good, Clark App. No. 06-CA-34, 2007-Ohio-327, at ¶ 32. Nevertheless, "`the plain error doctrine is not favored [in appeals of civil cases] and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" Id., quoting Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,679 N.E.2d 1099, syllabus. We conclude that the present matter is not one of those extremely rare cases in which the doctrine should apply.
 {¶ 34} Furthermore, even under a plain error analysis, we do not find merit in *Page 14 
Dillingham's assignment of error. In establishing a claim for punitive damages in an action for fraud, the plaintiff must demonstrate, in addition to proving the elements of the tort itself, "`that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious.'" Davis v. SunRefining and Marketing Co. (1996), 109 Ohio App.3d 42, 58,671 N.E.2d 1049, quoting Charles R. Combs Trucking, Inc. v. Internatl. HarvesterCo. (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, paragraph three of the syllabus. Here, Wolfe and Johnson set forth three fraudulent acts committed by Dillingham that we find to be particularly egregious: 1) Dillingham's representation to Wolfe and Johnson that he had retained an attorney to oversee their case and that the attorney had instructed them not to attend the depositions in March 1998; 2) Dillingham's representation to Wolfe and Johnson that he would pay the $25,000.00 judgment rendered against them and that the case had subsequently been dismissed; and 3) Dillingham's failure to inform Wolfe and Johnson that the judgment had increased from $25,000.00 to $300,000. Under these circumstances, we conclude that the jury's award of $100,000.00 in punitive damages was not unreasonable, where the evidence clearly shows that Dillingham took advantage of the trust Wolfe and Johnson placed on his decision-making power, and on more than one occasion, overtly ignored what was in the appellees' best interest. "The purpose of punitive damages is to deter similar conduct in the future."Turner v. Bob Ross Buick, Inc. (Nov. 22, 1993), Montgomery App. No. 13809, 1993 WL 485256, at *5. With deference to the jury's verdict, we agree that an award of $100,000.00 in punitive damages will significantly influence Dillingham's conduct in the future. Thus, Dillingham's second assignment of error is overruled. *Page 15 
 {¶ 35} Having overruled both of Dillingham's assignments of errors, the judgment of the trial court is affirmed.
WOLFF, P.J., and DONOVAN, J., concur.
[1] In September 2002, Loyalty, Wolfe, and Johnson filed a stipulation, which stated as follows:
"2) Loyalty and Wolfe and Johnson have entered into an agreement to resolve the creditor's bill through a partial assignment of the judgment to be rendered in the above-captioned matter.
"3) To effect this resolution, Loyalty, Wolfe and Johnson request the Court include the following language in the final judgment entry to be rendered in the above-captioned matter:
"`On September 16, 1999, Loyalty was granted permission to intervene in this action and subsequently filed a creditor's bill. Pursuant to a stipulation between Loyalty, Wolfe and Johnson filed in September of 2002, that creditor's bill is hereby resolved by a partial assignment of the instant judgment against David Dillingham, H. Vincent Walsh, and Condo Walsh, such assignment being more particularly described in a separate agreement between Loyalty, Wolfe and Johnson.'"
The trial court did not include the requested language in its final judgment entry. As a result, this Court determined that the resolution did not take effect and Loyalty's counterclaim against Wolfe and Johnson remained unresolved. *Page 1