[Cite as *Washington Twp. Bd. of Trustees v. Ryan*, 2013-Ohio-4072.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

BOARD OF TRUSTEES OF  :
WASHINGTON TOWNSHIP, et al.

    Plaintiff-Appellee  :  C.A. CASE NO.  25561

v.  :  T.C. NO.  11CV2138

JAMES E. RYAN, et al.  :  (Civil appeal from
Common Pleas Court)

    Defendants-Third Party  :
    Plaintiff-Appellants

  :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the \_\_\_\_20th\_\_\_ day of \_\_\_\_September\_\_\_\_, 2013.

. . . . . . . . . .

JOSHUA R. SCHIERLOH, Atty. Reg. No. 0078325, One Prestige Place, Suite 700, Miamisburg, Ohio 45342
    Attorney for Plaintiff-Appellee Washington Township

DAVID C. GREER, Atty. Reg. No. 0009090 and KIRSTIE N. YOUNG, Atty. Reg. No. 0084007, 400 PNC Center, 6 N. Main Street, Dayton, Ohio 45402
    Attorneys for Third Party Defendants-Appellees Lillian Mapp, Chris Welch and Tim Welch, Joan Mantil and Joe Mantil, Joyce Koller and Floyd Koller, Mary Mathews and David Mathews, Shan Kilian and Steve Kilian, Linda Giffen and Dan Giffen, Karissa Acred and Jeff Acred

JAMES K. HEMENWAY, Atty. Reg. No. 0040859, 130 W. Second Street, Suite 1818, Dayton, Ohio 45402

Attorney for Third Party Defendants-Appellees Carin Solganik and Tom Silverii

ROBERT S. FISCHER, Atty. Reg. No. 0071640, 8738 Union Centre Blvd., West Chester, Ohio 45069
    Attorney for Defendants-Third Party Plaintiffs-Appellants James and Connie Ryan

DAVID EIDELBERG, Atty. Reg. No. 0040530, 88 E. Broad Street, Suite 1600, Columbus, Ohio 43215
    Attorney for Third Party Defendant-Appellee Allstate Insurance Company

DEAN and CARRIE HINES, 7950 Clyo Road, Centerville, Ohio 45459
    Third Party Defendants-Appellees

. . . . . . . . . .

FROELICH, J.

{¶ 1}  James E. and Connie Ryan appeal from two judgments of the Montgomery County Court of Common Pleas, which related to the Ryans' use of and/or failure to maintain property they owned at 6088 Mad River Road.  The first judgment granted summary judgment against the Ryans and in favor of Washington Township on the Township's claim for an injunction and for abatement of a nuisance on the Ryans' property. The second judgment granted summary judgment against the Ryans and in favor of the the Ryans' neighbors on the Ryans' claims for breach of contract, breach of fiduciary duty, intentional infliction of emotional distress, intentional interference with use and enjoyment of property, conversion, and negligence, all of which related to responsibility for the maintenance of a bridge on the private lane by which the Ryans accessed their home.

{¶ 2}    For the following reasons, the judgment of the trial court in favor of the Lane Association on the Ryans' breach of contract claim will be reversed, and this matter will be remanded for further proceedings.  Summary judgment on the Ryans' claims for breach of fiduciary duty, intentional infliction of emotional distress, intentional interference

with use and enjoyment of property, conversion, and negligence is affirmed. The judgment in favor of the Township will also be affirmed.

{¶ 3}    Additionally, we note that the trial court erroneously "overruled" a purported motion for summary judgment by one of the Ryans' neighbors (Carin Solganik) against the neighborhood association for breach of contract, as no such claim existed and no such motion had been made.    Rather, Solganik had asserted claims for contribution and diminution in value against the Ryans, and had filed a motion for summary judgment on these claims.    The trial court erred in failing to address these claims.

*Facts and Procedural History*

{¶ 4}    Mad River Lane[1] is a private drive off of Mad River Road in Washington Township, along which eleven houses were built.    Two parcels at the end of the lane were accessible to vehicles only via a bridge.

{¶ 5}    Prior to the formation of the Lane Association (described below), both of the parcels located beyond the bridge were owned by David and Patricia Lehman.    The Lehmans had acquired their property from Frank and Nancy Zoringer in 1981, and the Lehmans were among the signatories to the Lane Association agreement.    The deed to the Zoringers' property described two parcels (1 and 2) and four easements (A, B, C, and D). The deed also contained a restrictive covenant which provided that the Grantors, "and by acceptance of this deed, Grantees, each agree that the roadway including the bridge * * * located on Easements A and B * * * shall be maintained, repaired and replaced, if necessary,

---

[1]The parties often refer to the private lane along which they live as Mad River Road, but in order to distinguish the lane from the public street, Mad River Road, off of which it runs, we will refer to it as Mad River Lane.

by Grantees so long as they are the owners of Parcel 1 and thereafter by the subsequent owner(s) thereof." The restrictive covenant further provided that the maintenance, repair or replacement of the roadway described in the easements would be shared proportionately by the owners of all dwellings located on Parcel 1 at that time or thereafter, in proportion to the length of the roadway over which access was provided. The property was conveyed by the Zoringers to the Lehmans subject to all easements, restrictions, covenants, maintenance requirements, and zoning restrictions.

{¶ 6} For many years, the residents of the lane maintained it pursuant to an informal agreement.[2] In 1986, amid concerns about the potential for additional development in the vicinity, the owners of the properties agreed to formalize their existing arrangement of contributing to the maintenance of the road and, additionally, to restrict future use of the road and/or its extension for use by adjacent landowners. Thus, the "Lane Association" was formed in 1988. The members agreed that they would "bear the proportionate cost of maintenance, repair, and clearing of snow in a ratio relating to the benefit derived therefrom[,] weighted to reflect distance from Mad River Road."

---

[2]The evidence did not suggest whether, under the informal agreement, the maintenance of the lane included the bridge.

{¶ 7}     After the Lane Association was formed, the Lehmans sold part of their property to the Ryans.[3]  A separate, adjoining parcel was sold by the Lehmans to Christopher and Linda Davis, the predecessors in interest of Carin Solganik.   The Ryan and Solganik residences are at the end of the development, beyond the bridge.

{¶ 8}     By 1998, the bridge at the back of the lane by which the Ryans and Solganik accessed their properties required significant repair.   The Ryans spent $5,000 to reenforce the center support of the bridge, but problems with the bridge continued.   The Ryans requested reimbursement from the Lane Association, but the Association refused.   The bridge continued to deteriorate and, in 2008, the Ryans and Solganik stopped using the bridge.   Solganik continued to access her property by foot.   The bridge collapsed in 2009.  Solganik eventually replaced the bridge with a military-style Bailey bridge at a cost of over $70,000, but the bridge was not certified and the weight load was not determined.   The Lane Association repeatedly refused to contribute to the cost of the Ryans' and Solganik's repairs to or replacement of the bridge or to the cost of having the bridge certified.

{¶ 9}     Due to the lack of certification, the Township refused to allow its vehicles, including emergency vehicles, to use the bridge.

{¶ 10}    The Ryans and Solganik believe that the Lane Association bears the responsibility to maintain and repair the bridge, because it is, in their view, part of the roadway described in the Association's Declaration.   The Ryans also believe that the terms of the Lane Association Declaration supercede the provision contained in the Ryans' deed, which specified that they were responsible for the maintenance of the bridge (a responsibility

---

[3] Based on the positions taken by the parties, it appears that the Ryans acquired "Parcel 1," as referenced in the Lehman deed.

placed, by the deed, on the owner of Parcel 1). The Lane Association members (other than the Ryans and Solganik) believe that the Association is not responsible for the repair, maintenance, or replacement of the bridge, because the agreement to maintain the lane did not expressly mention the bridge, because the other members never understood "the lane" to encompass the bridge, and because the distance calculations that the Association used to determine contributions to the maintenance of the lane had stopped at the front of the bridge.

{¶ 11} The Ryans have not used or maintained their property since the previous bridge collapsed, and their property is now in a state of disrepair. There are also numerous vehicles on the property which have remained there since the bridge collapse. Vandalism has exacerbated the condition of the house and vehicles. Solganik lives in her home, but with limited services from the Township, because of its refusal to send vehicles over the new, uncertified bridge.

{¶ 12} From June 20, 2008 through November 25, 2008, the Township issued numerous notices of zoning violations to the Ryans, and in July 2010, the Township notified the Ryans that they were in violation of the Township's Nuisance Abatement Resolution. The Ryans did not take any steps to bring the property into compliance as a result of these notices, and it does not appear that they appealed administratively from these findings.

{¶ 13} On March 21, 2011, Washington Township filed a complaint against the Ryans for Preliminary and Permanent Injunction and Abatement. The complaint alleged that the Ryans stored "junk," "refuse," and various inoperable items on their property at 6088 Mad River Road, in violation of the township zoning resolution applicable to an R-1

single family residential district and its exterior property maintenance code, and that the Ryans failed to bring their property into compliance when notified of the violations. The Township characterized the violations as a nuisance adversely affecting public health and safety. The complaint requested that the court enjoin the continued zoning violations by issuing "a preliminary and permanent injunction" and ordering the Ryans to abate the violations.

{¶ 14}    In their Answer and Third Party Complaint, the Ryans asserted numerous affirmative defenses and presented claims against the members of the Lane Association[4] for breach of contract in refusing to contribute to payment of the cost of making repairs to and ultimately replacing the dilapidated bridge leading to their home. They also brought claims for breach of fiduciary duty, intentional infliction of emotional distress, intentional interference with use and enjoyment of property, conversion, and negligence.

---

[4] All of the members of the Lane Association (other than the Ryans) were named as third-party defendants in the Ryans' Third-Party Complaint:    Lillian Mapp, Chris and Tim Welch, Joan and Joe Mantil, Joyce and Floyd Koller, Mary and David Mathews, Shan and Steve Kilian, Linda and Dan Giffen, Karissa and Jeff Acred, Dean and Carrie Hines, and Carin Solganik and Thomas Silverii.    The Lane Association was not named as a separate entity.    Silverii resides at Solganik's property, but is not an owner of that property or a member of the Lane Association.

{¶ 15} The Lane Association members named in the third-party complaint[5] filed an answer denying responsibility for maintaining or repairing the bridge and denying the Ryans' other claims. Solganik answered separately and filed a counterclaim against the Ryans, seeking contribution toward the cost of replacing the bridge and damages for diminution in the value of her property due to the existence of a nuisance on the Ryans' property.

{¶ 16} In October 2011, the Lane Association filed a motion for summary judgment on all of the claims in the Ryans' third-party complaint. In April 2012, the Township filed a motion for summary judgment on its claim related to the existence of a nuisance. Also in April 2012, the Ryans filed a motion for partial summary judgment on their breach of contract claim related to the Lane Association's responsibility to contribute to the repair, maintenance, and replacement of the bridge. In May 2012, Solganik filed a motion for summary judgment on all of the Ryans' claims, asserting that she had paid for the replacement of the bridge and had, at all times, supported the Ryans' position that the Lane Association was responsible for the maintenance of the bridge.

{¶ 17} In June 2012, the trial court granted the Township's motion for summary judgment. The court found that there was no genuine issue of material fact that the property was a nuisance and that the Ryans were in violation of the Township's Exterior Code, because they were not maintaining the property or the structures thereon. The court

---

[5] Hereinafter, our references to the Lane Association refer only to those members who collectively filed an answer to the third-party complaint and, later, a motion for summary judgment. Thus, this reference excludes Solganik, whose interest in the bridge differs from those of the other Lane Association members and who proceeded independently in the lower court proceedings. It also excludes Dean and Carrie Hines, who filed separate answers, alleging that they did not own property on the lane at the relevant times.

also concluded that no genuine issue of material fact existed that the property was being used in violation of Article 7, Section 4(A) of the Township Zoning Resolution, which prohibits the open storage of inoperable vehicles. The court acknowledged the Ryans' assertion that they could not get to their property, but concluded that the reason for the violation "carrie[d] no weight."

{¶ 18}    In October 2012, the trial court granted the Lane Association's motion for summary judgment on the breach of contract claim, and denied the Ryans' motion for summary judgment on this issue, finding that the Association was not required to contribute to the repair, maintenance, and/or replacement of the bridge. The court noted that the Ryans' deed placed responsibility for the bridge on the owner of Parcel 1[6] and that the Lane Association Declaration did not expressly or impliedly alter or supercede the Ryans' deed "in the event of a discrepancy." Because what would happen in the event of a discrepancy between the deed and the Declaration was not addressed in the Declaration, the court looked to intent of the parties. The court concluded that the intent of the signers of the Declaration had been for the formal "lane" to end at the front of the bridge that led to the Ryan and Solganik properties. The court further concluded that no genuine issue of material fact existed as to the Ryans' claims for breach of fiduciary duty, intentional infliction of emotional distress, intentional interference with use and enjoyment of property, conversion, or negligence. In so holding, the trial court granted the Lane Association's motion for summary judgment against the Ryans in its entirety and overruled the Ryans' motion for

---

[6]The court stated that it could not determine who currently lived on Parcel 1, as between the Ryans, Solganik, and the Hineses, but that it was clear that none of the homeowners to whom we have referred as the Lane Association lives on Parcel 1.

partial summary judgment. The court stated that Solganik's motion for summary judgment against the Ryans was overruled "to the extent that the Lane Association is required to pay for the certification and the cost of the bridge."[7]

{¶ 19} The Ryans appeal from the trial court's judgments in favor of the Lane Association on the breach of contract claim and in favor of the Township on the nuisance claim. The Ryans do not challenge the summary judgment on their claims for breach of fiduciary duty, intentional infliction of emotional distress, intentional interference with use and enjoyment of property, conversion, or negligence. They raise two assignments of error.

{¶ 20} The Ryans' first assignment of error states:

THE TRIAL COURT ERRED IN GRANTING THE LANE ASSOCIATION MEMBERS['] MOTION FOR SUMMARY JUDGMENT AND DENYING THE RYAN[S'] MOTION FOR SUMMARY JUDGMENT, FINDING THE LANE ASSOCIATION MEMBERS ARE NOT RESPONSIBLE FOR THE BRIDGE MAINTENANCE, REPAIR, AND REPLACEMENT.

{¶ 21} The Ryans contend that the trial court erred in granting summary judgment in favor of the Lane Association members because 1) the Declaration that created the Lane Association "clearly and unambiguously" required the maintenance of the lane, 2) due to the clarity of the Declaration, there was no reason to look at or rely on the restrictive covenant in

---

[7]The trial court's judgment, read as a whole, found that the Lane Association was *not* required to pay for the replacement or certification of the bridge; thus, the court's statement that Solganik's motion for summary judgment was "overrule[d] * * * to the extent that the Lane Association was required to pay" for the bridge is unclear. Moreover, Solganik did not have a claim against the Lane Association members; her counterclaim was only against the Ryans. Solganik has not appealed from the trial court's judgment.

the Ryans' deed, and 3) at the very least, there was a genuine issue of material fact regarding the Lane Association's responsibility to maintain the bridge, such that summary judgment was inappropriate.

{¶ 22}    Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 23}    Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 24} The Ryan deed contained a restrictive covenant which stated that the grantees (the Ryans) and their successors in interest agreed to maintain, repair, and replace the roadway located on Easements A and B, including the bridge. No one has denied that

the bridge referenced in the deed is the same bridge at issue in this litigation.

{¶ 25}  "A 'restrictive covenant' is a private, contractual agreement, usually embodied in a deed or lease, that restricts the use or occupancy of real property."  *Canton v. Ohio*, 95 Ohio St.3d 149, 766 N.E.2d 963, ¶ 28, citing Black's Law Dictionary (7th Ed.Rev.1999) 371; *MJW Enterprises, Inc. v. Laing*, 2d Dist. Montgomery No. 21253, 2006-Ohio-4011, ¶ 17.  In the Lehman/Ryan deed, the restrictive covenant stated that "the roadway (including the bridge) * * * shall be maintained, repaired, and replaced, if necessary, by Grantees so long as they are the owners of Parcel 1," with an additional provision for sharing those costs with additional "dwelling houses," if any, subsequently located on Parcel 1.  The Ryans claim that the obligation to maintain the bridge contained in the deed, was "superceded" by the Declaration of the Lane Association,  a claim which the other members of the Lane Association dispute.  The trial court did not err in considering the language of the restrictive covenant in the deed in attempting to determine what effect, if any, the Declaration had on the restrictive covenant expressed in the deed; the restrictive covenant in the deed did not prohibit the owner of the property from entering into a contractual agreement with other residents of the lane for the maintenance of the bridge, the preservation of the private nature of the neighborhood, etc..., and thus was not dispositive, in itself, of the Lane Association's claim.

{¶ 26}  As the trial court observed, the deed explicitly provided for the maintenance of the bridge, but the Declaration did not specifically mention the bridge.  The court stated that the Declaration also "d[id] not contain express, or even implied, language that * * * it [was] controlling over the deeds of all the properties affected by the Declaration

in the event of a discrepancy," although the Declaration does require that the deeds of the affected properties "shall incorporate reference" to the Declaration.

{¶ 27}   The court concluded that, "[w]ithout any express, or implied, language of which document controls in the event of a discrepancy in language, the Court turns to the intent of the parties when signing the Declaration."   It then discussed the deposition testimony of two Lane Association members that the intention had been for the lane to end at the front of the bridge, that previous owners of the Ryan property took responsibility for the bridge, and that there was no history of homeowners along the lane paying for bridge repairs or maintenance.   Based on this evidence, the court found that it was "clear" that the Lane Association was not obligated to maintain, repair, or replace the bridge.

{¶ 28}   As the trial court discussed, the restrictive covenant in the Ryans' deed was explicit with respect to maintenance of the bridge; the Lane Association's Declaration was not.   The Declaration did not specifically mention the bridge; it defined the lane as extending "to the land owned by" the Ryans' predecessors in interest, the Lehmans, and referenced an attached exhibit.   The exhibit was composed of a hand-drawn map of the "vicinity" and copies of the language of three easements contained in the deeds of other Lane Association properties (not the Lehman/Ryan deed).   The Declaration also contained the following statement: "The real property subject to these Declarations is described on Exhibit 'A' attached hereto, which description is not necessarily complete, but which reflects generally the known metes and bounds as taken from existing instruments of record."   The Declaration seems both to adopt these descriptions and to disclaim them (as "not necessarily complete").

{¶ 29}    The court considered parole evidence as to the boundaries intended by the Lane Association Declaration.  Floyd Koller, one of the residents of the lane, testified by deposition and affidavit (executed in 1998) that he had been charged by the residents of the lane with measuring "the distance of road surface to be maintained from Mad River Road to the front of the bridge" leading to the homes occupied at the time by the predecessors in interest of the Ryans and Solganik.  He stated that he "did not cross the bridge and did not include it in making this measurement," which was then used to calculate what each resident would pay "to clean and maintain" the lane.  He also stated that he measured the distance to the center of each driveway, and the documents he presented established that the Ryans, Solganik, and their predecessors in interest had   paid identical amounts, as measured to the front of the bridge.

{¶ 30}    The Ryans presented an affidavit from a surveyor, who had been hired to examine the easements attached to the Declaration and to determine whether the bridge was part of the private lane described in the Declaration.  The surveyor described the lane as "comprised of three (3) road easements over private property," as reflected in the attached easements, and he attached a map to his affidavit.  He concluded that the lane ended at "Point A" (as indicated on the map), which was well past the bridge, where the lane "completely abuts" the Ryans' property, and that the Ryans' property line was in the middle of the bridge at "Point C."  Based on the surveyor's opinion as to the location of their property line in the middle of the bridge, the Ryans argued that they could not have been included in the Lane Association if the lane did not extend beyond the front of the bridge.

{¶ 31}    The evidence presented can be summarized as follows:  In support of its motion for summary judgment, the Lane Association presented evidence that the Declaration

defined the lane as extending to the Ryan property, that the fees to be paid by each property were calculated by measuring the lane from Mad River Road to the front of the bridge, and that certain of the owners of the properties in front of the bridge had long understood that the bridge was not included in the agreement to maintain the lane and had never paid to maintain the bridge. This evidence satisfied the Lane Association's initial burden of demonstrating that there was no genuine issue of material fact. In response, the Ryans presented an affidavit of a surveyor, who had examined the easements attached and incorporated by reference to the Declaration; the surveyor's affidavit stated that the lane described in the easements continued beyond the bridge and that the Ryans' property line was in the middle of the bridge. This evidence rebutted the Lane Association's assertion that there was no genuine issue of material fact.

{¶ 32}    In reaching its conclusion that the Lane Association was not responsible for the maintenance of the bridge, the court recognized that it made both "legal and factual findings." Summary judgment is appropriate, however, only when there is "no genuine issue as to any material fact." A trial court is not permitted to weigh the facts and make factual determinations in deciding a motion for summary judgment, where there is conflicting evidence as to those facts. "* * * [A] trial court must adhere to Civ.R. 56(C) and view the record in the light most favorable to the party opposing the motion. *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 138, 522 N.E.2d 477, 480. Even the inferences to be drawn from the underlying facts contained in the affidavits and depositions must be construed in the nonmoving party's favor. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 315." *Turner v.*

*Turner*, 67 Ohio St.3d 337, 341, 617 N.E.2d 1123 (1993). The trial court erred in making factual findings as to the intent of the parties at the summary judgment stage of these proceedings.

{¶ 33} Moreover, the trial court's ruling on Solganik's motion for summary judgment appears to be incorrect or incomplete. The court overruled Solganik's motion for summary judgment "to the extent that the Lane Association is required to pay for the certification and the cost of the bridge." However, Solganik had filed neither a claim nor a motion for summary judgment against the Lane Association. One section of Solganik's summary judgment motion does argue that she was entitled to "an entry of summary judgment in [her] favor" on the Lane Association's obligation to pay for the maintenance of the bridge, but the trial court could not grant such relief where no claim against the Lane Association had been made by Solganik. Her claims were against the Ryans, and her motion for summary judgment sought summary judgment against the Ryans on their various claims against her (breach of contract, breach of fiduciary duty, intentional infliction of emotional distress, intentional interference with use and enjoyment of property, conversion, and negligence). The trial court properly granted summary judgment in favor of Solganik on these claims. Solganik did not seek summary judgment on her breach of contract claim against the Ryans, and the trial court did not resolve this claim. Thus, Solganik's claims for damages against the Ryans for failure to contribute to the repair and maintenance of the bridge and for diminution in the value of her property have not yet been addressed in the trial court.

{¶ 34} The Ryans' first assignment of error is sustained.

{¶ 35} The Ryans' second assignment of error states:

THE TRIAL COURT ERRED IN GRANTING WASHINGTON

TOWNSHIP'S MOTION FOR SUMMARY JUDGMENT AS THERE IS

AMPLE EVIDENCE THAT IT IS IMPOSSIBLE FOR JIM AND CONNIE

RYAN TO COMPLETE THE REQUIRED REPAIRS.

{¶ 36} The Ryans contend that they have been unable to comply with the Township's zoning regulations because of their inability to safely access their property. They argue that the Township should not be allowed to require them (the Ryans) to access their property via the uncertified bridge in order to bring the property into compliance with the zoning regulations, when the Township will not allow its own personnel to access the property in that manner. The Township responds that the Ryans waived their argument challenging the zoning violations by failing to exhaust their administrative remedies.

{¶ 37} The Township attached copies of the many notices of the Ryans' zoning violations to its motion for summary judgment, as well as its notice that the Ryans were in violation of the Township Nuisance Abatement Resolution; this latter notice informed the Ryans of their right to appeal. There is no indication in the record that the Ryans pursued an administrative appeal of these violations.

{¶ 38} The Township raises the argument for the first time in this appeal that the Ryans waived their right to challenge the zoning violations, because they failed to exhaust their administrative remedies. Although there is no indication of an administrative appeal in the record before us, the record does not address this aspect of the procedural history directly, and there is no mention of this issue in the Township's motion for summary judgment or the trial court's decision. Accordingly, we will not address the issue of waiver

at this time.

{¶ 39} The Ryans argue that it was "impossible" for them to comply with the Township's zoning resolutions. Impossibility is not a defense to the existence of a zoning violation; it is an affirmative defense to a charge of contempt. *Goddard-Ebersole v. Ebersole*, 2d Dist. Montgomery No. 23493, 2009-Ohio-6581, ¶ 15, citing *Neff v. Neff*, 2d Dist. Montgomery No. 11058, 1989 WL 13531, * 2 (Feb. 13, 1989); *Porter v. Porter*, 2d Dist. Montgomery No. 19146, 2002 WL 1396034, * 3 (June 28, 2002). The Ryans have not been cited in contempt. If such a charge is filed in the future because the Ryans do not comply with the court's order enjoining them from maintaining a nuisance on their property, they may raise the affirmative defense of impossibility at that time. Whether such a defense will succeed will largely depend on the facts developed at such a contempt hearing.

{¶ 40} The second assignment of error is overruled.

{¶ 41} The judgment of the trial court in favor of the Lane Association on the Ryans' breach of contract claim is reversed and remanded for further proceedings. The trial court's purported judgment against Solganik and in favor of the Lane Association is also reversed, as no claim existed between these parties. The trial court failed to address Solganik's claims for contribution and diminution of value against the Ryans, and it must do so on remand. Summary judgment on the Ryans' claims for breach of fiduciary duty, intentional infliction of emotional distress, intentional interference with use and enjoyment of property, conversion, and negligence is affirmed. The judgment in favor of the Township is also affirmed.

. . . . . . . . . .

FAIN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Joshua R. Schierloh
David C. Greer
Kirstie N. Young
James K. Hemenway
Robert S. Fischer
David Eidelberg
Dean and Carrie Hines
Hon. Dennis J. Adkins

Case Name:          *Board of Trustees of Washington Township, et al. v. James E. Ryan, et al.*

Case No.:           Montgomery App. No. 25561
Panel:        Fain, Froelich, Welbaum
Author:             Jeffrey E. Froelich
Summary: