OPINION
{¶ 1} Plaintiff-appellant, MJW Enterprises, Inc. (MJW), appeals from a summary judgment rendered against it on its complaint seeking reformation of a deed. Specifically, MJW seeks to have a restrictive covenant contained within the deed declared void. MJW contends that the record demonstrates that no genuine issue of material fact exists, and that the evidence requires judgment in its favor.
 {¶ 2} We conclude that the evidence demonstrates that the restrictive covenant is clear, valid and enforceable. Therefore, we conclude that the trial court did not err in rendering summary judgment against MJW.
 I {¶ 3} In 1950, Elsie Mead established a 300-acre residential and working farm, known as Wingmead Farm, in Montgomery County. In 1951, Mary W. Mead and H. Talbott Mead moved into a residence on the farm. In 1985, thirty acres of the farm were conveyed by deed to Mary Jo Fender. The deed to Fender contained the following covenants:
 {¶ 4} "The Property is being conveyed to Grantee for residential purposes and Grantee acknowledges that it is important to the preservation of the value of the balance of Wingmead Farm that the Property be developed, if at all, as an attractive first-class single-family residential subdivision commensurate with the existing character and natural beauty of Wingmead Farm and compatible with current and future demands of prospective homeowners seeking high-quality residential accommodations.
 {¶ 5} "The Property, therefore, is conveyed, and shall be held, owned and reconveyed subject to the following restrictive covenants:
 {¶ 6} "(a) the Property shall be used only for single-family residential dwelling purposes of the character described above; and
 {¶ 7} "(b) the Property shall be developed if at all, in the following manner: (i) all residential units constructed on the Property shall be single-family detached homes of the character described above and townhouses or cluster homes shall not be permitted; (ii) there shall be no more than five such single-family residences located on the Property;"
 {¶ 8} The deed further stated that the provisions set forth in Part (b) above shall terminate upon the death of Mary Mead or H. Talbott Mead, whichever occurs later. H. Talbott is deceased; however, Mary Mead, aged seventy, is living.
 {¶ 9} Fender later built a residence on a portion of the thirty-acre property. Subsequently, she conveyed approximately seven acres of the property to MJW.[1]
 {¶ 10} In order to subdivide the property, MJW sought, and obtained, a change in the zoning classification for the seven acres. The area was re-zoned from a single family residential area to a Planned Unit Development area.
 {¶ 11} Thereafter, MJW filed this action, in which it sought to have the court declare the restrictions "null and void," based upon its claim that the restrictive covenant contained in the 1985 deed is inequitable, invalid and unenforceable. MJW's stated purpose behind the lawsuit was to be allowed to "construct nine residential units in conformity with the zoning plan." The defendants to the lawsuit include Fender as well as three individuals and two banks known to have an interest in Wingmead Farm. For purposes of clarity, all of the defendants will be referred to collectively as Wingmead Farm.
 {¶ 12} The parties conducted discovery and then filed cross-motions for summary judgment. The matter was referred to a magistrate for determination. The magistrate concluded that the restrictive covenant is valid and enforceable, and rendered judgment in favor of Wingmead Farm. MJW filed objections, which were overruled by the trial court.
 {¶ 13} MJW appeals from the summary judgment rendered against it.
 II {¶ 14} MJW's sole assignment of error is as follows:
 {¶ 15} "THE LOWER COURT ERRED IN DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT."
 {¶ 16} The sole issue for our determination is whether the trial court erred by finding that the restrictive covenant contained in the 1985 deed — specifically, the restriction of development to five, single-family residences — is valid and enforceable as against MJW.
 {¶ 17} A restrictive covenant is defined as a limitation on the free use of land. Tenbusch v. L.K.N. Realty Co. (1958),207 Ohio App. 133, 137. "Restrictive covenants which purport to control the use of real property are in the nature of private zoning or zoning by contract * * *." 10 Ohio Jurisprudence 3d (2005), Buildings, Zoning, and Land Controls, § 12.
 {¶ 18} As a general rule, Ohio law does not favor restrictions on the free use of land. Haller v. Hickory CreekHomeowners Assn., Hamilton App. No. C-010332, 2001-Ohio-4032. Thus, when a covenant is unclear or ambiguous, a court, in choosing among two or more reasonable constructions, must choose the construction resulting in the least limitation on the use of the land. Id. However, where the language in a restriction is clear, a court must enforce the restriction, unless it violates law or public policy. Dean v. Nugent Canal Yacht Club, Inc.
(1990), 66 Ohio App.3d 471, 475.
 {¶ 19} In this case, the trial court found that the "language of the deed restriction is clear and unambiguous." We agree. First, the restriction is clear on its face — until the death of Mary Mead, any development of the property is limited to five, single-family residences. Second, the intent of the parties to the deed and the purpose of the covenant, is clear. The restriction is intended to limit development in order to maintain the "existing character" and "natural beauty" of the farm. These restrictions, created to maintain the aesthetic quality of a residential area, are valid. See, Monday Villas Property OwnersAssn. v. Barbe (1991), 75 Ohio App.3d 167, 171; PrestwickLandowners' Assn. v. Underhill (1980), 69 Ohio App. 2d 45, 49. Finally, the term of the restriction is clear and of reasonable duration, since development is only restricted for so long as Mary Mead remains alive.
 {¶ 20} Despite our conclusion that the covenant is clear, unambiguous and therefore enforceable, we will address MJW's arguments to the contrary. We begin with MJW's claim that the trial court's decision must be reversed because it does not strictly construe the restriction. This argument misapprehends the rules of contract construction — if the writing is clear and unambiguous, it shall be applied as written; it does not require interpretation or construction. Martin v. Lake Mohawk PropertyOwner's Assn., Carroll App. No. 04 CA 815, 2005-Ohio-7062, ¶ 23. We hold that the restriction in this case is clear, requiring no construction or interpretation. Thus, this argument lacks merit.
 {¶ 21} Next, MJW contends that the covenant cannot be enforced because it has ceased to "have the capacity to fulfill its purpose," because it no longer has substantial value. In support, MJW cites the affidavit testimony of its appraiser, who opined that developing nine houses on the property would not decrease the value of the farm, and that it would, in fact, increase its value.
 {¶ 22} We find this argument unpersuasive. As noted above, a plain reading of the covenant reveals that its "value" to Mary Mead, obviously an intended beneficiary of the covenant, is aesthetic, not monetary. Thus, evidence that development of the property would increase the monetary value of either the dominant tenement, the subservient tenement, or both, has no bearing on the issue.
 {¶ 23} MJW also contends that since the covenant conflicts with the applicable zoning ordinances, the covenant is invalid. We disagree. First, we find no conflict. While the applicable zoning ordinance permits MJW to construct more than five houses on the property, it does not require MJW to do so; thus, limiting the property to five houses is not in conflict with the requirements of the zoning ordinance. Second, as a general rule, when a restrictive covenant in a deed is more restrictive than an applicable zoning ordinance, the covenant will prevail. See, 10 Ohio Jurisprudence 3d (2005), Buildings, Zoning, and Land Control, § 12, citations omitted.
 {¶ 24} Finally, MJW contends that the covenant violates public policy. In support, it argues that the covenant is not good property planning, imposes a hardship upon MJW, and ceases upon Mary Mead's death. MJW does not cite, and we cannot find, any statutory or case law to support these arguments, and we are not persuaded by them.
 {¶ 25} In order to affirm a summary judgment, a reviewing court must determine that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C). An appellate court's review of summary judgment is de novo. Long v. TokaiBank of California (1996), 114 Ohio App.3d 116, 119. We find no evidence to support any of MJW's claims, and thus, conclude that the trial court did not err in rendering summary judgment against MJW.
 {¶ 26} As a final note, this lawsuit sounds in equity. MJW seeks to have the restriction in the deed declared void, which in essence, entails reformation of the deed. Equity allows reformation of a written instrument when, due to mutual mistake on the part of the original parties to the instrument, the instrument does not evince the parties' actual intention. Masonv. Swartz (1991), 76 Ohio App.3d 43, 50. The purpose of reformation is to re-write an instrument so that it expresses the intent of the parties. Delfino v. Paul Davies Chevrolet, Inc.
(1965), 2 Ohio St.2d 282, 286. Here, there is no evidence to support a finding that the covenant was created by mistake or that it does not express the intention of the parties to the instrument. Therefore, the equitable remedy of reformation is not merited.
 {¶ 27} MJW's sole assignment of error is overruled.
 III {¶ 28} MJW's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Wolff, J., and Valen, J. concur.
(Hon. Anthony Valen, retired from the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] MJW is a limited liability company. Michael J. Wenzler is the sole owner of the company.