[Cite as *Warman v. Select Auto*, 2024-Ohio-366.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| JEREMI WARMAN | : | |
| Appellee | : | C.A. No. 29839 |
| v. | : | Trial Court Case No. 2021 CV 00303 |
| SELECT AUTO | : | (Civil Appeal from Common Pleas Court) |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 2, 2024

. . . . . . . . . . .

JARED A. WAGNER, Attorney for Appellant

SCARLETT M. STEUART, ELIZABETH AHERN WELLS, MATTHEW C. SCHULTZ, & RONALD L. BURDGE, Attorneys for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Select Auto appeals from the trial court's judgment granting default judgment to Jeremi Warman on his claims related to the alleged deceptive and fraudulent sale of a defective used vehicle and its award of damages totaling $56,891.29, plus post-judgment interest. Select Auto challenges the trial court's

denial of its motion for relief from the default judgment and the court's corresponding denial of leave to file an answer out-of-time. It further claims that the trial court erred in its award of actual and treble/punitive damages. For the following reasons, the trial court's judgment will be affirmed in part, reversed in part, and remanded for recalculation of actual and treble/punitive damages.

## I. Facts and Procedural History

{¶ 2} According to the complaint, on December 5, 2020, Warman purchased a 2014 Dodge Charger from Select Auto for $14,951.39 plus applicable taxes and fees. Warman had a trade-in allowance of $500, paid $6,000 as a down payment, and financed the balance. The vehicle came with a limited warranty.

{¶ 3} Shortly after the purchase, Warman discovered that the vehicle had structural damage, the airbags were inoperable, the vehicle needed a catalytic converter, and four Dodge recalls could not be performed because of the vehicle's condition. After discovering the truth about the vehicle's condition and before any substantial changes were made to the car, Warman asked Select Auto to cancel the sale and return his money. Select Auto refused. Warman alleged that Select Auto had never informed him about the Charger's unrepaired or improperly-repaired structural damage and that he never would have purchased the vehicle had he been aware of the car's actual condition.

{¶ 4} On January 27, 2021, Warman filed a civil action against Select Auto, an alleged corporation, for the fraudulent sale of the Charger. He brought claims under the Consumer Sales Practices Act (CSPA), the Motor Vehicle Sales Rule, Magnuson Moss Warranty Act (MMWA), and common law principles of fraud and deceit. Select Auto was

served with the complaint on February 1, 2021.

{¶ 5} On February 23, 2021, Rajest Vaish, as general manager and family partner of Select Auto, filed an answer denying the allegations and stating that Select Auto was a family partnership, not a corporation. The same day, Warman filed a motion to strike the answer and to compel Select Auto to retain counsel. Warman argued that a corporation cannot appear pro se and that Vaish, as a non-attorney, could not file an answer on Select Auto's behalf. Select Auto did not respond to the motion.

{¶ 6} On March 10, 2021, the trial court granted Warmer's motion to strike, noting that Vaish was not authorized to practice law and that a corporation may not maintain an action through an officer who is not a licensed attorney. The court granted Select Auto 30 days to obtain counsel and file a responsive pleading. The order indicated that a copy was mailed to Select Auto at the business address.

{¶ 7} On April 14, 2021, Vaish filed a response to the trial court's order. He wrote that he had just checked the online docket and learned of Warman's request that he hire an attorney; he stated that he had not received any mailing from the court. Vaish indicated that Select Auto was a family partnership, not a corporation or limited liability company, and that as a "very small" used car dealership, it was unable to afford an attorney. He expressed that he did not believe that he needed an attorney to proceed in the case and that he would be representing the business. He concluded by asking the court to "let me handle this case my self [sic]." Vaish's filing was docketed as an answer, and the trial court and parties have subsequently referred to it as such.

{¶ 8} Approximately two weeks later, Warman filed two contemporaneous

motions: (1) a motion to strike defendant's pro se answer and motion to compel defendant to obtain counsel, and (2) a motion for default judgment. The first motion was similar to Warman's prior motion to strike and to compel Select Auto to retain counsel. In the second motion, Warman requested a default judgment on liability only due to the failure of Select Auto to have an attorney enter an appearance and to file an answer. On May 25, 2021, the trial court granted the motion for a default judgment on liability.

{¶ 9} Vaish filed a notice of appeal on Select Auto's behalf. *See Warman v. Select Auto*, 2d Dist. Montgomery No. 29171. We issued a show cause order, asking Select Auto to show cause why the appeal should not be dismissed for lack of a final appealable order and for failing to effectively institute an appeal due to Vaish's status as a non-attorney. In his response, Vaish stated that he was the sole proprietor of Select Auto and therefore could represent Select Auto without an attorney. On October 26, 2021, we dismissed the appeal for lack of a final appealable order without deciding whether it was properly instituted.

{¶ 10} On June 24, 2021, the day after Vaish had filed a notice of appeal on Select Auto's behalf, Warman filed a motion for damages consisting of trebled actual damages totaling $40,999.11 ($13,666.37 x 3), non-economic damages of $5,000, attorney fees of $2,398.75, and litigation costs of $374.39. The motion was supported by affidavits from Warman and his attorney as well as several documents concerning the vehicle. Shortly after we dismissed Select Auto's prior appeal, Warman requested leave to supplement his motion for damages, which the trial court granted. The trial court also scheduled a status conference for December 22, 2021.

{¶ 11} On December 13, 2021, counsel for Select Auto filed a notice of appearance. A week later, Select Auto asked the trial court to set aside the default judgment pursuant to Civ.R. 60(B) and to allow the dealership to file an answer out of time under Civ.R. 6(B). It supported the motion with an affidavit from Vaish. Select Auto further requested, in the alternative, that the court permit discovery regarding Warman's damages. Warman opposed the motion for Civ.R. 60(B) relief but had no objection to conducting discovery on damages.

{¶ 12} On May 13, 2022, the trial court denied the motion to set aside the default judgment. After concluding that Civ.R. 60(B) was not applicable because no final appealable order had been rendered, the trial court found that Select Auto's failure to file a timely answer was not due to excusable neglect, as required by Civ.R. 6(B). The court granted, however, the request for discovery on damages.

{¶ 13} In April 2023, after an unsuccessful attempt at mediation, additional supplementation of Warman's motion for damages, and discovery, the trial court held a hearing on Warman's damages. Warman and Vaish both testified, and the parties submitted several documentary exhibits and a joint stipulation. The parties also filed post-hearing briefs. In its May 25, 2023 judgment entry, the trial court found that Warman was entitled to actual damages of $13,666.37, non-economic damages of $200, treble/punitive damages of $27,732.74, and attorney fees of $15,292.18. Select Auto was also required to pay court costs.

{¶ 14} Select Auto appeals from the trial court's judgment, raising two assignments of error.

## II. Excusable Neglect under Civ.R. 6(B)

{¶ 15} In its first assignment of error, Select Auto claims that the trial court erred by denying its request for leave to file an answer out of time, pursuant to Civ.R. 6(B), and argues that it demonstrated excusable neglect. Specifically, it emphasizes that English is not Vaish's first language and that when Select Auto was formed around 2006, Ohio common law permitted a partner to represent a partnership. Select Auto further asserts that its motion was filed within a reasonable time and that it had a meritorious defense to Warman's claims.

{¶ 16} A default judgment may be granted when a defendant fails to make an appearance by filing an answer or otherwise defending an action in accordance with Ohio's Rules of Civil Procedure. *Davis v. Immediate Med. Servs., Inc.*, 80 Ohio St.3d 10, 14, 684 N.E.2d 292 (1997), citing Civ.R. 55(A). Under Civ.R. 6(B)(2), a trial court may, in its discretion, permit the filing of an untimely answer or responsive motion if the failure to act was the result of excusable neglect. *Id.*

{¶ 17} "Neglect under Civ.R. 6(B)(2) has been described as conduct that falls substantially below what is reasonable under the circumstances." *Davis* at 14. In determining whether neglect is excusable, courts must consider all the surrounding facts and circumstances. *Id.* "[T]he test for excusable neglect under Civ.R. 6(B)(2) is less stringent than that applied under Civ.R. 60(B)," and courts should be mindful of the preference that cases be decided on their merits, where possible, rather than on procedural grounds. *State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs.*, 72 Ohio St.3d 464, 466, 650 N.E.2d 1343 (1995). *See also White v. Grange Ins. Co.*, 2d Dist.

Montgomery No. 29151, 2022-Ohio-497, ¶ 27. Nevertheless, while Civ.R. 6(B) grants broad discretion to the trial court, its discretion is not unlimited. *Citizens Natl. Bank of SW Ohio v. Harrison*, 2016-Ohio-2746, 64 N.E.3d 315, ¶ 17 (2d Dist.), citing *Miller v. Lint*, 62 Ohio St.2d 209, 214, 404 N.E.2d 752 (1980).

{¶ 18} Select Auto agrees that its motion is governed by Civ.R. 6(B) rather than Civ.R. 60(B), under which a trial court may relieve a party from a *final* judgment. While Select Auto argues that it has a meritorious defense to Warman's claims and that its motion was timely, considerations relevant to a Civ.R. 60(B) motion, we must focus on whether Select Auto demonstrated excusable neglect under Civ.R. 6(B).

{¶ 19} In ruling on Select Auto's motion, the trial court first found no excusable neglect based on the fact that Vaish is not a native English-speaker. We find no abuse of discretion in this determination. Vaish stated in his affidavit that he is a naturalized United States citizen who was born in India and that English is not his first language. Even accepting this as true, Vaish filed several documents with the trial court that demonstrated his understanding of the claims and issues being raised. As noted by the trial court, these filings, although not in perfect English, were easy to read and understand, and they consisted of cogent responses to both Warman's claims and the court's entry striking the first pro se answer. The trial court reasonably found no excusable neglect based on Vaish's English language skills.

{¶ 20} The trial court further found no excusable neglect due to Vaish's misunderstanding about whether he, as a partner of Select Auto, could represent the partnership in court. In rejecting Select Auto's argument, the trial court emphasized that

Vaish was told in the March 10, 2021 entry striking his first answer and in the May 25, 2021 entry granting a default judgment on liability that he could not represent his business under Ohio law. In addition, Select Auto was given an opportunity and additional time to obtain counsel, but Vaish chose not to do so due to the expense. The court further noted that Vaish pursued an appeal on Select Auto's behalf, and this appellate court also questioned his ability to represent Select Auto. The trial court continued:

Defendant had multiple opportunities to obtain counsel and willfully chose to ignore the Court's admonitions that he was not legally permitted to practice law and represent his business. He even admits that he spoke with an attorney at one point about his case but ultimately decided to proceed with representing his business himself. This went on for over nine months until he finally hired legal counsel in December of 2021, a month and a half after the Court of Appeals dismissed his case. This is a prime example of a complete disregard for the justice system and Mr. Vaish's ignorance of Ohio partnership law does not and cannot constitute excusable neglect.

Decision Denying Motion to Set Aside Default Judgment, p. 5.

{¶ 21} We cannot conclude that the trial court abused its discretion in denying Select Auto's motion to file its answer out of time. The court reasonably found that Select Auto's failure to file a timely answer was a choice based on Vaish's disagreement with the trial court's ruling that he, as a non-lawyer, could not represent Select Auto. Whether Vaish reasonably believed that the trial court's ruling was incorrect – and he argues on

appeal that, prior to 2009, Ohio law allowed partnerships to be represented by one of its partners pro se – is irrelevant. We note, however, that R.C. Chapter 1776, the Uniform Partnership Act, has been in effect since 2008, more than a decade before this action was filed. It is well established that pro se litigants are presumed to know the law and correct procedure and are held to the same standard as other litigants. *E.g., Ndiaye v. Stahl*, 2d Dist. Montgomery No. 29276, 2022-Ohio-1523, ¶ 12; *State v. Grieco*, 2d Dist. Montgomery No. 28822, 2021-Ohio-735, ¶ 29. Vaish's disagreement with the trial court's analysis and/or ruling about his ability to represent the partnership did not justify Select Auto's failure to file a timely response to the complaint.

{¶ 22} Moreover, Select Auto ultimately obtained counsel several months after Warman had obtained a default judgment. We previously noted that, "[t]o some extent, the existence of a pending motion for default judgment militates against granting leave" to file an answer out of time. *Stumpff v. Harris*, 2d Dist. Montgomery No. 23354, 2010-Ohio-1241, ¶ 16. The fact that a default judgment on liability had already been awarded weighed against granting leave to file an untimely answer in this case.

{¶ 23} Although another court might have reasonably reached a different resolution on Select Auto's motion, we cannot conclude that the trial court abused its discretion in finding no excusable neglect. Select Auto's first assignment of error is overruled.

### III. Calculation of Damages

{¶ 24} In its second assignment of error, Select Auto claims that the trial court committed reversible error in its calculation of damages. It asserts that the manifest

weight of the admissible evidence did not support a finding of any actual damages or that Warman was entitled to treble damages, punitive damages, or damages for fraud. Select Auto further contends that, in determining damages, the trial court improperly relied on inadmissible evidence. Select Auto does not challenge on appeal the trial court's award of non-economic damages, attorney fees, and court costs.

{¶ 25} In awarding actual and treble/punitive damages, the trial court apparently focused on the CSPA, as Warman suggested in his memoranda in support of damages. When the CSPA has been violated by an unfair or deceptive act or practice, the consumer may "rescind the transaction or recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages." R.C. 1345.09(A). The statute defines "actual economic damages" as "damages for direct, incidental, or consequential pecuniary losses" resulting from the violation; it does not include noneconomic damages. R.C. 1345.09(G).

{¶ 26} The measure of actual damages for a CSPA claim involving deception is generally the expectancy interest. *Averback v. Montrose Ford, Inc.*, 2019-Ohio-373, 120 N.E.3d 125, ¶ 38 (9th Dist.); *Green Maple Ents., LLC v. Forrester*, 2021-Ohio-4640, 182 N.E.3d 1265, ¶ 47 (7th Dist.). As the parties recognize, this is the difference between the value of the property as it was represented to be and its actual value at the time of purchase. *See, e.g., Averback* at ¶ 38. Expectation damages reaffirm the contract and seek to place the injured party in the position it would have been had the contract been fully performed. *Id.*, citing *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. Franklin No. 12AP-647, 2013-Ohio-3890, ¶ 29; *Phillips v. Ratchet Automotive &*

*Performance*, 10th Dist. Franklin No. 19AP-399, 2021-Ohio-1033, ¶ 16. "The consumer retains the property and seeks compensation for the diminished value of the property." *Id.*, citing *Cremeans v. Robbins*, 4th Dist. Ross No. 99CA2520, 2000 WL 781215, *4 (June 12, 2000).

**{¶ 27}** Expectation damages are distinguishable from reliance damages, which are generally associated with the recission of the contract. "Reliance damages place the non-breaching party 'in the position it was in before the contract was made.' " *Averback* at ¶ 40, quoting *Alternatives Unlimited-Special* at ¶ 29.

**{¶ 28}** We generally review a trial court's calculation of damages for an abuse of discretion. *E.g., Stonebridge Neighborhood Assn., Inc. v. Knapinski*, 2018-Ohio-424, 128 N.E.3d 742, ¶ 23 (2d Dist.). To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984).

**{¶ 29}** Here, Select Auto asserts that the trial court erred in determining that Warman's actual damages amounted to $13,166.37. In reaching that amount, the court agreed with Warman's proposed calculation, which used the difference between the "total sale price" of the Charger ($20,039.28) and the actual value of the vehicle at the time of delivery based on a subsequent CarMax purchase offer ($7,000), plus $127.09 for repairs that Warman made to the vehicle. Select Auto argues that the court's use of the "total sale price" and the value provided by CarMax was incorrect.

## A. Evidence of Actual Value

**{¶ 30}** We begin with Select Auto's claim that the trial court erred in determining

that the actual value of the Charger was $7,000 rather than approximately $16,000, as Select Auto suggested. Select Auto asserts that Warman provided no admissible evidence as to the actual value of the vehicle and that its own evidence established that the actual value was greater than the sale price.

{¶ 31} To establish the actual value of the Charger, Warman relied upon a CarMax appraisal of the car and his own testimony that the vehicle was worth $7,000. Select Auto states in its appellate brief that "while Select Auto stipulated to the authenticity of the document, the statements within that document purporting to testify as to the value of the vehicle constitute hearsay and are not admissible." The dealership further maintains that Warman could not base his own estimation of the Charger's actual value on this hearsay evidence.

{¶ 32} On March 31, 2023, the parties filed stipulations in advance of April 3, 2023 damages hearing. Paragraph nine of that document stated: "The documents produced and/or generated by CarMax Auto Superstores, Inc. are authentic *and admissible business records under Evi.R. [sic] 803(6) and Evi.R. [sic] 902* and there is no need to call a records custodian or authenticating witness at any hearing or trial in this matter." (Emphasis added.) Paragraph ten contains a similar stipulation regarding documents produced by CarMax Auto Superstores Service, Inc. The CarMax appraisal offer, admitted as Plaintiff's Exhibit 8, fell within the stipulation. Contrary to Select Auto's assertion that it agreed only to the authenticity of the appraisal, the plain language of the stipulation reflects an agreement as to the document's admissibility under an exception to the hearsay rule. Accordingly, the trial court did not err in considering the CarMax

appraisal.

{¶ 33} Regardless, Warman was permitted to testify to the actual value of the Charger pursuant to the owner-opinion rule. "[T]he owner-opinion rule provides an exception to the general rule that only an expert may express an opinion of value." *Johnson v. Clark Cty. Bd. of Revision*, 155 Ohio St.3d 264, 2018-Ohio-4390, 120 N.E.3d 823, ¶ 21, citing *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, 17 N.E.3d 537, ¶ 18. "Ohio law has long recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property." *Smith v. Padgett*, 32 Ohio St.3d 344, 347, 513 N.E.2d 737 (1987).

{¶ 34} The factfinder is not required to accept the owner's valuation and has wide discretion to determine what weight to give it. *Johnson* at ¶ 22. As noted by the Ohio Supreme Court, "[o]wnership may involve an intimate knowledge of the nature, quality, cost, and condition of the property. However, ownership of property may in other cases constitute very little, if any, qualification to form an opinion as to the value of the property." *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 626, 605 N.E.2d 936 (1992).

{¶ 35} At the damages hearing, Warman testified that he estimated that the Charger was worth $7,000 when he bought it. He indicated that his estimate was based on an appraisal that he received from CarMax on December 10, 2020, and his knowledge of "all the things that's wrong with it." Warman acknowledged that he was not a mechanic, car dealer, or in the business of valuing vehicles, but he stated that he had

"general knowledge."

**{¶ 36}** Warman's testimony of the Charger's $7,000 value at the time of purchase constituted competent evidence, which the trial court, as the finder of fact, was entitled to credit. *See Woods v. Woods*, 2d Dist. Greene No. 2016-CA-40, 2018-Ohio-37, ¶ 22-23 (the trial court reasonably credited wife's estimation of the value of certain personal property over husband's estimation that property had little to no value). By the time the trial occurred, Warman had owned the Charger for several years. By virtue of his ownership, Warman was familiar with the actual physical condition of the vehicle and the amount he could receive for it if he wished to sell it. His estimation was subject to cross-examination. The fact that the CarMax appraisal formed a substantial basis for his opinion did not negate his ability to offer his opinion.

**{¶ 37}** Select Auto asserts that the trial court should have credited its documentary evidence of the Charger's actual value, which it claimed was $15,988.37. Select Auto reached this value by adding the amount it paid for the vehicle at auction ($8,000 + a $405 buyer fee) and the amount it paid in repairs prior to selling the vehicle to Warman ($7,583.37). The purchase amount was supported by the bill of sale and invoice from ADESA Lansing. The bill of sale indicated that the Charger had structural damage and was sold as is.

**{¶ 38}** Vaish explained the process for inspecting and repairing vehicles that Select Auto purchased. He stated that he would have his certified mechanic, an independent contractor, inspect the vehicle first. Tr. at 78. If the mechanic "cannot verify," he would send the vehicle to the dealer for an inspection. After receiving the

report from the dealer, the mechanic would fix it. *Id.* Vaish indicated that he could not afford to have the dealer perform every repair and explained that his mechanic charged less. Select Auto's mechanic produced a document itemizing all the work he performed on the Charger, but that document was not produced or offered into evidence. Tr. at 83-84. According to Vaish, Exhibit B to his affidavit contained copies of invoices and receipts to ship and repair the Charger. Vaish Aff. ¶ 8. The documented expenses totaled $7,583.37.

{¶ 39} Vaish testified that the value of the Charger at the time of Warman's purchase was approximately $16,000 or $17,000. Tr. at 51. His estimation was apparently based on all of the expenses that Select Auto incurred regarding the vehicle. Vaish included the financing charges that the dealership owed to the bank, which paid for the vehicle on Select Auto's behalf at the auction. Tr. at 48, 86-87. The bank was repaid when the vehicle was sold. (This use of short-term loans to purchase vehicles is known as floor planning.)

{¶ 40} Upon review of the evidence presented at the damages hearing, the trial court reasonably accepted Warman's estimation of the Charger's actual value at the time of purchase, rather than Select Auto's asserted value. The bill of sale from the auction indicated that the Charger had structural damage, but there is no indication that Vaish was aware of the full extent of the damage and needed repairs when Select Auto paid $8,000 for the vehicle. To the contrary, Vaish's testimony reflected that he did not know the vehicle's condition or whether the damage was fixable until after it was transported to Ohio and inspected by his mechanic and a Dodge dealership. Accordingly, the trial court

could have found that $8,000 did not represent an accurate starting point for determining the Charger's actual value at the time Warman purchased it.

{¶ 41} Moreover, the trial court could have reasonably concluded that Select Auto's documentary evidence did not support a conclusion that $7,583.37 in value was added to the vehicle after the auction. Select Auto's invoices and receipts included $400 for shipping and $3,310 for labor charges, which the trial court could have reasonably concluded added nothing to the Charger's value. Additionally, it appears that Select Auto provided multiple invoices/receipts for the same parts, such as spark plugs, an ignition coil, brake pads, and rotors. The court could have reasonably questioned whether Select Auto's purported repair costs were entirely accurate. The trial court also could have concluded that finance charges paid to the bank should not be included in the vehicle's actual value. The trial court's use of Warman's opinion of the vehicle's value ($7,000), as opposed to Select Auto's (between $15,988.37 and $17,000), was neither against the manifest weight of the evidence nor an abuse of discretion.

**B. Use of Total Sale Price**

{¶ 42} Select Auto further challenges the trial court's inclusion of financing costs and fees in determining Warman's actual damages.

{¶ 43} Warman's bill of sale for the Charger showed that the vehicle's purchase price was $14,951.39. The sale included additional charges consisting of (1) a documentary service charge of $250; (2) sales tax of $1,140.10; (3) title fee of $15; and (4) a temporary tag fee of $18.50. With these taxes and fees, the total due to Select Auto was $16,374.99. Warman financed $9,874.99 of this amount which, with an annual

percentage rate of 24.49 percent, would result in finance charges totaling $4,164.29. Thus, Warman's total cost to purchase the vehicle was $20,039.28 ($16,374.99 + $4,164.29). Warman argued in the trial court that the total sale price reflected the value of the Charger as represented.

{¶ 44} At the outset, we reiterate that the trial court had broad discretion in determining the appropriate amount of actual damages. As stated above, the CSPA permits a plaintiff to recover "direct, incidental, or consequential pecuniary losses" resulting from the violation. R.C. 1345.09(G). Moreover, the fact that Select Auto did not have control over some of the amounts included in the total sales price and did not receive those amounts has little bearing, if any, on whether they fall within R.C. 1345.09(G).

{¶ 45} Nevertheless, we conclude that the trial court abused its discretion when it included the costs associated with the vehicle's purchase. The trial court's damages calculation represented a recission approach: it returned to Warman the total amount he spent for the vehicle and offset that amount by the monetary value of the vehicle (as determined by the trial court) that Select Auto provided. However, Warman was not entitled to receive reliance damages associated with recission. Although Warman continued to own the vehicle when the damages hearing occurred, he did not seek recission as a remedy at the damages hearing, which made reliance damages unavailable. Although we agree with Warman that expectations damages are not necessarily limited to the contract price of the vehicle, depending on the specific facts and circumstances, the inclusion of finance charges and additional fees in this case was

inappropriate. Accordingly, the matter must be remanded to the trial court for recalculation of Warman's actual damages.

### C. Treble Damages

{¶ 46} Select Auto further claims that the trial court erred in awarding treble damages, recovery for fraud, and punitive damages based on a knowing failure by Select Auto to disclose known safety defects and issues with the vehicle. Warman did not respond to this argument. Nevertheless, we find it lacks merit.

{¶ 47} Under the CSPA, a consumer may recover three times the amount of his or her actual economic damages, or $200, whichever is greater, where the violation was previously declared to be a deceptive act or practice. R.C. 1345.09(B). Punitive damages are available in an action for fraud where the fraud is aggravated by the existence of malice or ill will or if the wrongdoing is particularly gross or egregious. *Wolfe v. Walsh*, 2d Dist. Montgomery No. 21653, 2008-Ohio-185, ¶ 34. In his proposed calculation of damages, Warman asserted that the treble damages under the CSPA were also an appropriate measure of punitive damages for his fraud and other claims.

{¶ 48} Select Auto's failure to file an answer resulted in an admission to the allegations in Warman's complaint regarding Select Auto's conduct. Under Civ.R. 8(D), "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." Warman alleged in his complaint that, "[p]rior to selling the vehicle to Mr. Warman, Select Auto knew or should have known that the vehicle had structural damage. However, no one at Select Auto bothered to tell Mr. Warman the truth about the vehicle's structural

damage that was either unrepaired or repaired in an unworkmanlike manner, and instead kept this information a secret from him."   Complaint ¶ 5; *see also* Complaint ¶ 51.   The complaint included additional allegations that Select Auto breached its warranties and representations to Warman, and thus engaged in unfair, deceptive, and unconscionable practices.   These allegations were admitted when Select Auto failed to file an answer.

**{¶ 49}** Moreover, at the damages hearing, Warman testified that Select Auto informed him that the Charger had been inspected and taken to another Dodge dealership and "had a recall done on it."   Tr. at 13.   After taking the car to the same dealership, Warman learned that the recall work was not performed.   *Id.*   No one at Select Auto had informed Warman that the recall work could not be done.   Vaish asserted during his own testimony that the airbags would work, despite the report from Performance Dodge that recall work could not be performed.   He acknowledged that he told Warman that the car was 100 percent safe.   Tr. at 85.   The trial court could have reasonably concluded that treble damages were justified.

**{¶ 50}** The trial court awarded punitive/treble damages in the amount of $27,732.74.   This amount appears to be typographical error, as $13,666.37 (actual damages) multiplied by two equals $27,332.74.   Regardless, having concluded that the matter must be remanded for a recalculation of actual damages, we likewise must remand the matter for a recalculation of treble/punitive damages based on the new actual damages amount.

**{¶ 51}** Select Auto's second assignment of error is sustained in part and overruled in part.

## IV. Conclusion

**{¶ 52}** The trial court's judgment will be affirmed in part, reversed in part, and remanded for recalculation of actual and treble/punitive damages.

. . . . . . . . . . . . .


TUCKER, J. and HUFFMAN, J., concur.